**DARTMOUTH–WILLOW TERRACE, INC.,**
**et al., Appellants,**

**v.**

**Kathleen B. MacLEAN et al., Appellees.**

Court of Appeals of Kentucky.

May 10, 1963.

As Modified on Denial of Rehearing
Nov. 1, 1963.

Henry A. Triplett, Boone & Triplett, Louisville, for appellants.

S. J. Stallings, Robert L. Durning, Jr., Robert L. Sloss, David A. Jones, Wyatt Grafton & Sloss, Stuart Handmaker, Louisville, for appellees.

STANLEY, Commissioner.

The question is whether or not an apartment house may be erected on certain lots in Louisville because of building restrictions contained in former conveyances thereof.

The appellee, H. G. Whittenberg, has contracted to buy the property from his coappellee, Kathleen B. MacLean, conditioned upon a right to erect an apartment house on it. They instituted this action for a declaratory judgment to determine the question. The defendants were the appellants, Dartmouth-Willow Terrace, Inc. and Sam B. Weakley, Jr. and wife, and a number of other owners of property in what was originally a subdivision lying between Bardstown Road and Cherokee Park, developed in 1907 by the Baringer Land Company. The court accepted the suit as a class action. Some of the defendants did not answer, and four others merely joined issue. The appellants joined issue, asserted an af-

firmative defense and asked the court to adjudge and declare that no apartment house can be built on the property. The judgment declared the plaintiffs' land not to be subject to restrictions against the construction of an apartment house. Only two of the parties defendant have appealed from the judgment.

The subdivision covered a large area. It was divided into five or six irregularly shaped blocks and more than 200 lots. Some of the lots were conveyed with no restriction at all as to use. Others had indefinite restrictions, and many of them were restricted "for resident purposes only." The lots along Bardstown Road have long been used for commercial purposes. The rest of the area has been pretty well built up with fine homes and a number of large apartment houses. We agree with the court's conclusion that if it could be said there was a general plan of restrictions, it "falls far short of being in any way uniform." The lots involved are designated on the plat as lots No. 3, 4, and 5 in Block 3. They front on Cherokee Road where it is intersected by Willow Avenue, and are now known as 1412 Cherokee Road and 1400–1402 Willow Avenue. The Weakley property is across Willow Avenue and is occupied as a single family residence. The property of Dartmouth-Willow Terrace, fronting on Willow and Baringer Avenues, consists of two large apartment buildings, one of which is eight stories high.

Two types of restrictive covenants are involved.

There was no specific restriction against the erection of apartments on any of the lots in the entire subdivision except as follows: Conveyances by Baringer Land Company of two lots in Block 3 provided that no apartment should be built on three *adjoining* lots. These three are the lots involved. When they were conveyed to plaintiffs' predecessor in title, the deed contained a restriction against the construction of apartments on them. But the present owners of the two adjacent lots have executed quit claim deeds to Mrs. MacLean, releasing any rights which they might have to enforce the restrictions against apartment houses on her lots.

■ This restriction on the particular property was not a part of any general scheme or plan of development of the subdivision. It was for the special benefit of the grantees of the two adjacent lots and their privies. The restriction did not extend to the grantees of other lots in the tract or their successors in title. Feinberg v. Board of Education, City of Louisville, 210 Ky. 737, 276 S.W. 823; Bagby v. Stewart's Ex'r, Ky., 265 S.W.2d 75; 14 Am.Jur., Covenants, Conditions and Restrictions, §§ 311, 312; 26 C.J.S. Deeds § 167(3).

■ By mutual agreement, the owners of the particular lots for which alone the restriction was imposed have, by deed, released and relinquished their right to enforce the same and thereby abrogated the servitude. Eaton v. Trautwein, 288 Ky. 97, 155 S.W.2d 474; 14 Am.Jur., Covenants, Conditions and Restrictions, § 292. We concur, therefore, in the conclusion of the trial court that this particular restriction does not prevent the erection of the apartment upon the lots.

The original conveyances of the three lots contained covenants restricting the building on each lot to "only one house, which shall * * * be for residence purposes only." Apparently, with some doubt, the circuit court concluded that there was a general plan of the subdivision that all lots in Block 3 should be restricted as thus described; therefore, that any lot owner affected had the right to enforce the restriction. The court pointed out that the defendant Dartmouth-Willow Terrace, Inc. was in no position to claim that the covenant against apartments on plaintiffs' land was to protect its land against the construction of an apartment house, for it has erected two large apartment buildings within a distance of 200 or 300 feet.

On the lots in Block 2 in this same subdivision, on which an apartment building has been erected, the deed contained, among other provisions, a restriction that any improvements placed thereon "shall consist of only one building which shall be used for residence purposes only." The court held in Struck v. Kohler, 187 Ky. 517, 219 S.W. 435, that this restriction permitted the right to build apartment houses and construed the provision as not barring the erection of one of them upon more than one lot. In the present case we have the word "house" instead of "building." We see no distinction.

It has been said that "house" is all inclusive and may include any and every kind of structure, depending upon the context in which it is used and the purpose sought to be effected. 26 C.J.S. Deeds § 164(2); 14 Am.Jur., Covenants, Conditions and Restrictions, § 217. Undoubtedly, in the present restriction the term "house" meant a dwelling house or residence. As stated in Parrish v. Newbury, Ky., 279 S.W.2d 229, " 'Apartments'; in this relation, has a well-known meaning as a type of plural residences." The building is often called an "apartment house."

In Ratkovich v. Randell Homes, Inc., 403 Pa. 63, 169 A.2d 65, the court construed a restrictive covenant in a deed prohibiting the erection of more than one "house" on each lot in a subdivision as not forbidding the erection of a multiple family residence. We may say, as the court said in that case, had the creator of the restriction desired to restrict the use of these lots to single family dwellings or to prohibit multiple family dwellings, i. e., apartment houses, it would have been easy to so word the restriction.

The trial court pointed out that the appellants, the Weakleys, are the owners of a single family residence, but that they and their predecessors in title had not objected when an apartment house was built next door and other such structures were erected in the immediate neighborhood on lots with similar restrictions.

The decision of the court might well have been rested on the language of the restriction, but it was really planted upon the ground that there has been such a great change of conditions in the Baringer Subdivision, brought about by the construction of numerous duplex and multiple dwellings and many large apartment houses on the tract, that the restriction in the present deed, if it was intended to limit the lots to one-family dwellings, has been extinguished insofar as it may have excluded an apartment house. Anness v. Freeman, Ky., 294 S.W. 2d 77. The pleadings and many exhibits upon which the court based the summary judgment confirm this conclusion.

The judgment is affirmed.