DECISION
The Plaintiffs in this action are seeking a permanent injunction to prevent the Defendants, their neighbors and the owners of an abutting residential lot, from subdividing said lot and erecting a second dwelling thereon.
The lots in question are the product of an approved subdivision of a 7.51 acre parcel into Lots No. 1 (five acres owned by the Defendants) and No. 2 (2.51 acres owned by the Plaintiffs). The subdivision in place was approved by the Portsmouth Planning Board subject to the following restrictions:
1. Lots No. 1 and No. 2 may not be further subdivided.
2. Not more than one single-family home with normal outbuildings shall be constructed on each lot.
The Plaintiffs are presently seeking a permanent injunction enforcing the restrictive covenants against the Defendants who desire to further subdivide their lot on the basis that said restrictions have been released and pose no impediment to their plan.
The pertinent predecessor in title of the original 7.51 acre parcel was Laure Ashley who, in 1982, was deeded the land comprised of the real estate, a residential dwelling and the entirety *Page 2 
of a way designated as Selina Lane.[1] In the same year Laure acquired the land it became the subject matter of a lawsuit filed by her brother, John E. Ashley, and the siblings' father, Franklin Ashley. (Ashley v.Ashley, NC-1982-0418.) In 1986, a Court order including a settlement agreement of the lawsuit provided that the 7.51 acre parcel would be subdivided into the aforementioned Lots, 1 (to be owned by Laure) and 2 (to be conveyed to John Ashley, Plaintiff in the instant action). (See Exs. 22, 23, 24.)
During the 1982 litigation Laure entered into an agreement with her counsel, Attorney Daniel V. McKinnon ("McKinnon") that she would convey her portion of the property to him (in consideration of legal services rendered) upon subdivision approval. Approval was procured from the Portsmouth Planning Board in 1991 and recorded, with the aforementioned restrictions, in the Land Evidence Records.
On July 12, 1991, in accordance with the aforementioned agreement, Laure conveyed Lot 1 to McKinnon by way of a deed which referenced the recorded subdivision plan and contained the two restrictions. McKinnon, on June 19, 2001, conveyed Lot 1 to himself and John B. Harwood and the two of them, on the same day, conveyed the lot to the Defendants in the present action. Both deeds contained the language: "subject to restrictions put on the face of the above [subdivision] plan imposed by the Town of Portsmouth but released by these grantors."
As to Lot 2, it was conveyed by Laure to Plaintiffs in the present action by a "confirmatory" deed dated August 28, 1996. Although that deed as well contained the restrictions it was made subject to an "Affidavit and Release" which provided:
 This language [of the restrictions] was included in the deed because the Town of Portsmouth has imposed these conditions on the use of the aforementioned property and because these *Page 3 
conditions appear on the subdivision plan referenced to in said deeds. It was not and is not my intention to burden the aforementioned premises with these restrictions, and to the extent that I have the authority, I hereby release John E. Ashley and the premises from said conditions.
Plaintiffs contend that despite this language "only the owner of Lot 2 could release the owner of Lot 1 from the restrictions and vice versa. No one but Laure and her brother John have owned Lot 2 and they never released Lot 1. Similarly, neither Mr. McKinnon, Mr. Harwood, or the Kehews have released the owner of Lot 2. Thus, the restrictions remain in force for both lots." (Pl.s' Mem. at 6.)
The Defendants counter that the "Affidavit and Release" which was recorded on August 28, 1996, is "notice to the world" and releases Plaintiffs' lot from the private restrictions "because it uses the plural deeds and because there are only two lots it also releases the restrictions on defendants' lot." (Def.s' Mem at 3.)
As noted in 20 American Jurisprudence 2d § 226, "[r]estrictive covenants running with the land are subject to discharge by a duly-executed release or agreement." However, several jurisdictions have held that the consent of all owners is required to release a subdivision's restrictions. See, e.g., Truong v. City of Houston, 99 S.W.3d 204, 214 (Tex.App. 2002) ("Property owners in a subdivision may not grant releases of deed restrictions without the agreement of the other owners within the subdivision."); Flowers v. August,426 S.W.2d 480, 482 (Ky. 1968) ("Less than all of the lot owners could not vitiate the restriction."); Dartmouth-Willow Terrace, Inc. v. MacLean,371 S.W.2d 937, 938 (Ky. 1963) (holding that because, by "mutual agreement, the owners of the particular lots for which alone the restriction was imposed have, by deed, released and relinquished their right to enforce the same," the restriction was no longer enforceable). *Page 4 
The Defendants' closing attorney, Eric Chappell, whose practice consists predominantly of real estate transactions, thoroughly and credibly testified as to the chronology of events which have affected the status of the property in controversy. Attorney Chappell, who was in attendance at the Planning Board's August 2005 meeting, explained that the Board released the restrictions because they declared the status of Selina Lane to be a public way. (Tr. 11/21/06 at 21-22.) Mr. Chappell further testified that based upon his review of the pertinent deeds and land evidence records "the owner of Lot 1 released the restrictions and then a deed from Dan McKinnon and John Harwood to the Kehews" reinforced that release as to the Kehews. Id. at 23. The result is the "same with Lot 2 with the affidavit and release and Confirmatory Quitclaim Deed on Exhibit 28." Id. Furthermore, the restrictions on the subdivision in place "were released by the Planning Board that night [August of 2005]."Id.
The credible evidence demonstrates that all parties agreed to the release of the original restrictions, albeit not simultaneously. Since the lot owners by "mutual agreement" have "released and relinquished their right to enforce the same" the restrictions in controversy are no longer enforceable. See Dartmouth-Willow Terrace, 371 S.W.2d at 938.
Therefore, Plaintiffs' request for injunctive relief to enforce the restrictive covenants and preclude further subdivision is denied.[2]
Counsel for the Defendants, Kenneth A. and Mary Ellen Kehew, shall prepare an order conforming to this decision.
[1] This Court has previously ruled in the declaratory judgment prong of this action that Selina Lane is a public way.
[2] This ruling renders moot Defendants' estoppel argument.