The **ROMAN CATHOLIC DIOCESE OF GALVESTON–HOUSTON and St. Laurence Catholic Church, Appellants,**

v.

**FIRST COLONY COMMUNITY SERVICES ASSOCIATION, INC., Appellee.**

No. 01–93–00222–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 21, 1994.

Rehearing Denied Aug. 18, 1994.

Percy L. "Wayne" Isgitt, Houston, for appellants.

Rick S. Butler, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a summary judgment granted First Colony Community Services Association, Inc. (the Association). The trial court found the Association's restrictive covenant imposed $63,386 in maintenance assessments on St. Laurence Catholic Church. We reverse and remand for trial.

### Fact Summary

The Association recorded its Declaration of Covenants, Conditions and Restrictions in the Fort Bend County real property records on June 22, 1982. Four months later, the Diocese purchased seven acres in the Association development subject to the Declaration.

The Declaration imposed general monetary assessments upon each owner for use in maintaining common areas. In 1988, the Association imposed an annual assessment on the St. Laurence Catholic Church property. The Association brought action against the Diocese and St. Laurence to collect the unpaid maintenance assessments due for the years 1988–92. The Diocese contends the Declaration never specifically mentions that churches are subject to assessments. Both parties moved for summary judgment, and both argued the Declaration was unambiguous. On December 24, 1992, the trial judge granted the Association summary judgment finding the land in the Association owned by the Diocese is subject to the maintenance assessments.

The summary judgment evidence to be considered by this Court consists of (1) the deed to the property purchased by the Diocese, (2) the Declaration of Covenants, Conditions and Restrictions for the Association, and (3) the affidavit of Ralph Troiano, the president of the managing agent of the Association.

For summary judgment to be proper, the movant must be entitled to judgment as a matter of law, and there must be no issues of material fact. *Nixon v. Mr. Property Mmgt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Mobil Oil v. Texas Commerce Bank–Airline*, 813 S.W.2d 607, 608 (Tex.App.—Houston [1st Dist.] 1991, no writ). On review, we must consider the evidence in the light most favorable to the non-movant, and resolve all doubts and inferences in its favor. *Nixon*, 690 S.W.2d at 549; *Mobil*, 813 S.W.2d at 608. When both parties move for summary judgment, as here, each party must carry its own burden as the movant and, in response to the other party's motion, as the non-movant. *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). As we review each of the motions for summary judgment, we must indulge all reasonable inferences and resolve all doubts in favor of the non-movant. *University of Tex. Health Science Ctr. v. Big Train Carpet, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987).

■ If the Declaration is worded so it can be given a certain or definite legal meaning, it is not ambiguous and the court will construe it as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). A contract, however, is ambiguous if its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.*

■ Whether the Declaration is ambiguous is a matter of law for the trial court to determine. *Settlers Village Community Improvement Ass'n, Inc. v. Settlers Village Ltd.,* 828 S.W.2d 182, 184 (Tex.App.—Houston [14th Dist.] 1992, no writ); *cf. Coker,* 650 S.W.2d at 394 (property settlement agreement found to be ambiguous and remanded to trial court); *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 739 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (referral fee agreement was ambiguous). If there is no ambiguity, the construction of the Declaration is a question of law to be determined by the trial court. *Settlers,* 828 S.W.2d at 184; *GT & MC, Inc. v. Texas City Refining, Inc.,* 822 S.W.2d 252, 255–56 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (court found a contract was not ambiguous and accorded it its plain meaning).

### Challenge to the Association's summary judgment

■ In points of error one and two, the Diocese contends the trial court erred in granting the Association's motion for summary judgment because the Association did not establish, as a matter of law, that the assessment provisions of the Declaration applied to its property. The Diocese contends there is an issue of material fact as to whether a church is required to pay the assessment fees set out in Article VII of the Declaration. The Diocese argues that, because there is no mention of churches in the Declaration under assessments, the terms used under that section do not apply to it.

The Declaration states it is imposed under a general plan of improvement for all owners of real property within the Association. It makes various provisions for voting rights, property rights, maintenance, architectural designs, landscaping, condemnation, mortgages, and reservation of mineral rights. It refers to owners of real property and defines tract, residential tracts, commercial units.

In its opening paragraphs, the Declaration of Covenants states:

Declarant and the subscribers hereby declare that all of the property described in exhibit A ... shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions which are for the purpose of protecting the value and desirability of and which shall run with the real property submitted to this Declaration and which shall be binding on all parties having any right, title or interest in the described properties....

Article I of the Declaration includes the following definitions:

*Section 1.* Areas of Common Responsibility" shall means and refer to:

(a) the Common Areas;

(b) those areas, if any, which by contract, with any residential or condominium association ... become the responsibility of the Association;

(c) any manager's office located on the Properties.

*Section 6.* "Commercial unit" shall mean a unit constructed upon a Tract, intended for the use and occupancy as an office or other commercial purposes, and shall, unless otherwise specified, include within its meaning (by way of illustration, but not limitation) commercial condominium units and units within a Commercial Association, joined together with at least one or more other units by a common wall, roof or foundation.

*Section 8.* "Common Expenses" shall mean and include the actual and estimated expenses of operating the Association, including any reasonable reserve, all as may be found to be necessary and appropriate by the Board pursuant to this Declaration, the By-laws, and the Articles of Incorporation.

*Section 15.* "General Assessment" shall mean the assessment created for the purpose of paying the expenses of the Association as a whole.

*Section 32.* "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of any part of the properties . . .

*Section 34.* "Property" or "Properties" shall mean and refer to the real property described in Exhibit "A," . . . and shall further refer to such additional property as may hereafter be annexed. . . .

*Section 38.* "Residential Unit" shall mean any portion of the Properties intended for any type of independent ownership for use and occupancy as a dwelling by a single household. . . .

*Section 43.* "Tract" shall mean and refer to each parcel of land within the Property as designated by the Declarant, or shown on a recorded plat of the Property, or those lands annexed thereto, and established for the purpose of constructing an office, retail, commercial, educational, municipal, governmental or other similar structure thereon.

Article VII, Section 1 of the Declaration states in part:

Section 1. *Creation of General Assessment.* There are hereby created assessments for Common Expenses as may be from time-to-time specifically authorized by the Board of Directors. *Except as hereinafter provided, the General Assessment shall be allocated equally among all Residential Units and each 7,500-square-feet of land area in a tract (which may be apportioned among any commercial units therein) within the Association, and shall be for expenses determined by the Board to be for the benefit of the Association as a whole.* Neighborhood Assessments and Tract Assessments, as requested by or established for a particular Neighborhood or Tract, shall be levied only against Residential Units, Commercial Units or Owners in the particular portions of the Properties or in Residential Associations or Commercial Associations for whose benefit Common Expenses are incurred, and which benefit less than the Association as a whole. *Each Owner, by acceptance of a deed, is deemed to covenant and agrees to pay these assessments.* All assessments cre-

ated by this Declaration . . . shall be a charge on the land and shall be a continuing lien upon the Residential Unit, Commercial Unit or Tracts against which each assessment is made.

Each such assessment . . . shall also be the personal obligation of the person who was the Owner of such Residential Unit, Commercial Unit or Tract at the time the assessment arose . . .

(Emphasis added.)

The Diocese argues the church does not fit the definition of a commercial or residential unit; and the church does not fit under the definition of a tract because it was not established for "an office, retail, commercial, educational, municipal, governmental or other similar structure." In response, the Association argues that the definition of "owner" includes the Diocese.

The Declaration states that each owner whose land is in that tract described in Exhibit A, by acceptance of the deed, is deemed to have covenanted and agreed to pay the assessments. Although the definition of "owner" includes the Diocese, the definition of tract does not include the property of the church. To paraphrase the definition of "Tract" as defined in section 43:

Each parcel established for the purpose of constructing an office, retail, commercial, educational, municipal, governmental or other similar structure thereon, which is (1) within the Property as designated by the Declarant, or (2) shown on a recorded plat of the Property, or those lands annexed thereto . . .

The church does not clearly fall within the definition of a parcel established for the purpose of constructing "an office, retail, commercial, educational, municipal, governmental or other similar structure thereon."

The Association offered the affidavit of Ralph Troiano, president of C.I.A. Services, Inc., the managing agent for the Association, as evidence that churches were subject to tract assessments. Troiano detailed the formula used for tract owners who do not use recreational facilities and thus get a reduced general assessment. The affidavit states "Tract owners, such as commercial establish-

ments, schools and churches ..." The affidavit also states other churches in the Association were levied these assessments. While this is true, the issue is still whether the Declaration, as written, applies to churches. The Declaration does not clearly apply to the property of the Diocese.

We sustain points of error one and two.

### Diocese's request for summary judgment

In its third point of error, the Diocese contends that the trial court erred in denying its cross-motion for summary judgment because it is entitled to judgment declaring that its property is free from the assessments of the Association. On its own motion for summary judgment, the Diocese carried the burden of proving, as a matter of law, that its property was not included within the definition of "tract," as stated above. *Rose v. Baker & Botts,* 816 S.W.2d 805, 810 (Tex. App.—Houston [1st Dist.] 1991, writ denied). We must indulge all reasonable inferences and resolve all doubts in favor of the non-movant, here, the Association. *Big Train Carpet,* 739 S.W.2d at 792. The Diocese fails to carry its burden.

Referring again to the definition of tract, the property of the Diocese is not, as a matter of law, excluded from the definition of property which is used for "an office, retail, commercial, educational, municipal, governmental or *other similar structure* thereon." (Emphasis added.) Thus, because the Diocese's property is not excluded as a matter of law, the trial court properly denied the Diocese's motion.

The Declaration is ambiguous because it lacks any provision to determine if the phrase "other similar structure" includes a church. *See United Gas Pipe Line Co. v. Mueller Eng'g Corp.,* 809 S.W.2d 597, 602–03 (Tex.App.—Corpus Christi 1991, writ denied) (even though both parties assumed contract was unambiguous, court found contract ambiguous and reversed summary judgment because contract did not provide for price when "base price" was not paid).

We overrule point of error three, and reverse and remand for trial.