**Thin Van TRUONG, Mai X. Truong, William Giron, and Elena Mandujano, Appellants,**

v.

**The CITY OF HOUSTON, Appellee.**

**No. 01–01–00022–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 19, 2002.

Rehearing Overruled Jan. 13, 2003.

George W. Dana, Houston, for appellants.

Judy K. Hatfield, Houston, for appellee.

Panel consists of Justices HEDGES, NUCHIA and RADACK.*

---

* This case was submitted to a panel consisting of Justices Nuchia, Radack, and former Chief Justice Michael H. Schneider. Chief Justice Schneider however resigned from the court on September 6, 2002, to assume a position as Justice on the Texas Supreme Court, and

## OPINION ON MOTION
## FOR REHEARING

SHERRY RADACK, Justice.

We deny appellants' motion for rehearing, but withdraw our opinion and judgment dated November 14, 2002, and substitute this opinion in its stead.

This case arises from the City of Houston's (Houston) suit to enjoin appellants from any commercial activity on their property. The trial court granted Houston's motion for summary judgment, which sought to enforce a deed restriction encumbering appellants' property. Appellants appeal from the grant of summary judgment. We hold that (1) Houston was acting in its governmental function, and (2) appellants' defenses fail to abrogate Houston's authority to enforce the deed restriction. Accordingly, we affirm.

### Background

Appellants, Thin Van Truong, Mai X. Truong (Truong appellants), William Giron, and Elena Mandujano all own lots in Meadowbrook subdivision, Section "C". Each of the lots borders Howard Drive. These lots are located on the outside perimeter of the Meadowbrook subdivision. The Truongs purchased their lot in March 1997. Giron purchased his lot in November 1995, and Mandujano purchased her lot in February 1995. All of the lots are subject to a residential-use-only deed restriction, which was created in August 1945.

### Standard of Review

A trial court must grant a motion for summary judgment if the movant establishes that no genuine issue of material fact exists and the movant is entitled to

judgment as a matter of law. TEX.R. CIV. P. 166(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. Nixon v. Mr. Prop. Mgm't Co., Inc., 690 S.W.2d 546, 548–49 (Tex. 1985).

### Applicable Statutes

■ Houston brought suit to enforce deed restrictions in appellants' subdivision. TEX. LOC. GOV'T CODE ANN. § 212.133 (Vernon Supp.2002). The Local Government Code provides that a non-zoned, incorporated city has the power to sue to enforce any restriction contained or incorporated by reference in a recorded plan, plat, replat, or other instrument affecting a subdivision inside the city's boundaries. TEX. LOC. GOV'T CODE ANN. §§ 212.131–33 (Vernon Supp.2002). Restrictions in a plat recorded before August 30, 1965, may be enforced, but violations occurring before that date may not be enjoined or abated. TEX. LOC. GOV'T CODE ANN. §§ 212.131–33 (Vernon Supp.2002). The restrictions at issue were recorded August 24, 1945. Thus, Houston had the authority granted to it under the Local Government Code because the deed restrictions were being enforced after the grant of authority to Houston and arising out of deed restrictions that were validly and timely recorded.

### Discussion

In point of error one, appellants argue that the trial court erred in granting summary judgment for Houston. Appellants contend that they properly pleaded and

did not participate in this opinion. On rehearing, Justice Hedges replaced former

Chief Justice Michael H. Schneider on panel.

offered evidence to show the existence of a material fact on numerous affirmative defenses sufficient to defeat the summary judgment. Specifically, appellants argue that, when Houston enforces deed restrictions, its function is proprietary. Appellants further urge, because its function is proprietary, Houston is subject to appellants' affirmative defenses. For their authority, appellants rely on *Oldfield v. City of Houston*, 15 S.W.3d 219 (Tex.App.-Houston [14th Dist.] 2000 pet. denied).

On the other hand, Houston contends that appellants' reliance on *Oldfield* is misplaced. Houston claims that the *Oldfield* decision erroneously concluded that, when a city enforces deed restrictions, its function is proprietary-not governmental. Moreover, Houston argues after the *Oldfield* decision was issued, the Texas Legislature specifically addressed the issue. In 2001, the legislature amended the relevant portions of the Texas Civil Practice and Remedies Code and the Local Government Code to add the enforcement of land-use restrictions to the laundry list of activities defined as governmental functions. Tex. Civ. Prac. & Rem.Code Ann. § 101.0215(a) (Vernon Supp.2002); Tex. Loc. Gov't Code Ann. § 212.137 (Vernon Supp.2002). Consequently, Houston argues that, when it enforces deed restrictions, it is acting in its governmental function, and thus, it is not subject to any affirmative defenses. Finally, Houston contends that municipal enforcement of deed restrictions should be analyzed in accordance with principles of zoning, which have long been held to be government functions.

To begin our analysis, we will consider appellants' arguments in light of (1) Texas common law, (2) the *Oldfield* decision, and (3) the relevant 2001 amendments to the Texas Civil Practice and Remedies Code and the Local Government Code. Lastly, we will address Houston's argument that

the functionary distinction should be analogized in accordance with principles of zoning and land-use regulation powers.

**Texas Common Law**

Texas courts have recognized that certain affirmative defenses do not apply if a city is exercising a governmental, as opposed to a proprietary, function. For this reason, cases involving claims against a city begin with the threshold question of whether the city was acting in a proprietary or governmental function. *Bailey v. City of Austin*, 972 S.W.2d 180, 192 (Tex. App.-Austin 1998, pet. denied) (citing *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex.1986)). The question of where to draw the line between the city's proprietary and governmental functions is not an easy one—a fact that the Texas Supreme Court has recognized. *See City of Houston v. Shilling*, 150 Tex. 387, 240 S.W.2d 1010, 1012 (1951).

 Under the common law, Texas courts developed certain rules for evaluating the distinction between proprietary and governmental functions. Generally speaking, a proprietary function is one a city performs, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public. *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Texas 1987) (*citing Gates*, 704 S.W.2d at 739). Actions undertaken for the benefit of private enterprise or the residents of the city, rather than for the benefit of the general public, were deemed proprietary. *City of Fort Worth v. George*, 108 S.W.2d 929, 931 (Tex.Civ.App.-Fort Worth 1937, writ ref'd). Governmental functions are "those public acts which the municipality performs as the agent of the State in furtherance of general law for the interest of the public at large." *Bailey*, 972 S.W.2d at 192; *Gates*, 704 S.W.2d at 738–39; *see also City of Houston v. Southwest Concrete Constr.*,

*Inc.,* 835 S.W.2d 728, 730–32 (Tex.App.-Houston [14th Dist] 1992, writ denied). The key difference between a proprietary and governmental function is that the city functions in its governmental capacity when it performs functions mandated by the state. *Bailey,* 972 S.W.2d at 192–93; *Southwest Concrete,* 835 S.W.2d at 730–32; *Josephine E. Abercrombie Interests, Inc. v. City of Houston,* 830 S.W.2d 305, 308 (Tex.App.-Corpus Christi 1992, writ denied).

In the next section we will review Texas common law as applied in the Fourteenth Court Of Appeals' decision of *Oldfield v. City of Houston,* 15 S.W.3d 219, 226 (Tex. App.-Houston [14th Dist.] 2000, pet. denied).

### The *Oldfield* Decision

Appellants request that we follow the rule of law established by the Fourteenth Court Of Appeals' decision in *Oldfield v. City of Houston,* 15 S.W.3d 219, 226 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). The court in *Oldfield* held that a city served a proprietary, rather than governmental function, when it sought to enforce the deed restrictions. As such, affirmative defenses may be asserted to bar the city's enforcement of deed restrictions. *Id.* Houston claims that the *Oldfield* decision, because it was based on the premise that enforcement of deed restrictions by a city is a proprietary function, is erroneous. Houston further claims the decision is wrong, because the legislature has legislatively overruled the *Oldfield* decision.

### 2001 Legislative Amendments

We note that the legislature has amended the statutes that relate to a city's function when it is enforcing deed restrictions to specifically state that, when a municipality sues to enforce a land use restriction, it is acting in its governmental capacity. *See* TEX. LOC. GOV'T CODE ANN. § 212.137 (Vernon Supp.2002). The legislature's action has no application to this case because the amendment became effective on September 1, 2001, while the present case was pending. While the legislature's action is not outcome determinative to this case, we think the legislature's action supports the rationale of our decision.[1]

We do not accept appellants' invitation to follow the *Oldfield* decision. Instead, we agree with Houston that the functionary distinction should be analogized in accordance with principles of zoning and land-use regulation powers.

### Zoning Ordinances

 When the city is enforcing zoning ordinances, it is serving in its governmental function. A governmental unit's zoning authority is derived from the police power of the state, and all property is held subject to the valid exercise of the power. *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926); *Lombardo v. City of Dallas,* 124 Tex. 1, 73 S.W.2d 475, 479 (1934). Both zoning ordinances and land-use ordinances are valid exercises of a city's police power to safeguard the health, comfort, and general welfare of its citizens. *Lombardo,* 73 S.W.2d at 479. Land-use

---

**1.** The legislative history of the amendment (H.B.2580) specifically states that the purpose of the bill was to overrule the holding of *Oldfield v. City of Houston,* 15 S.W.3d 219 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). HOUSE COMM. ON CIVIL PRACTICE, BILL ANALYSIS, TEX. H.B. 2580, 77th Leg., R.S. (2001). The purpose of H.B. 2580 was not to effect a change in the law governing munici-pal enforcement of deed restrictions, rather to clarify that the enforcement of deed restrictions are a governmental function. *Enforcement of Deed Restrictions: Hearings on Tex. H.B. 2580 Before the House Comm. on Civil Practice,* 77th Leg., R.S. Tape 3, p. 2 (March 14, 2001) (statement of Chairman Bosse) (transcript available from Senate Staff Services Office).

ordinances protect local residents from the ill effects of urbanization and enhance the quality of life, and, as such, are proper exercises of a city's police power. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 934 (Tex.1998); *see also Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704, 709 (1950) (declaring city's act of re-zoning a residential district to an apartment house district constitutionally prohibited "spot zoning"); *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 806 (Tex.1984) (finding city ordinance requiring developers to dedicate some land to park use was not unconstitutional on its face).

 Enforcement of zoning ordinances is akin to enforcement of deed-restriction ordinances. Both accomplish the same objectives. The enforcement of zoning ordinances provides a judicial forum for aggrieved landowners to resolve conflicting interests in land use. *See Farmer v. Thompson*, 289 S.W.2d 351, 355 (Tex.Civ.App.-Fort Worth 1956, writ ref'd n.r.e); *Morton v. Sayles*, 304 S.W.2d 759, 763 (Tex.Civ.App.-Eastland 1957, writ ref'd n.r.e.). Enforcement of zoning and deed restrictions preserves and maximizes property values. *Young v. City of Houston*, 756 S.W.2d 813, 814–15 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (enforcing deed restrictions serves public purpose of maintaining property values). Finally, courts will enforce deed restrictions and zoning laws to preserve, complement, and advance comprehensive city or residential planning. *Curlee v. Walker*, 112 Tex. 40, 244 S.W. 497, 498 (1922).

Because the enforcement of deed restrictions is like the enforcement of zoning statutes, which qualifies as a governmental function, we hold that Houston's action in enforcing the residential-use-only deed restrictions against appellants is a governmental function.

Our decision is supported by the Texas Supreme Court decision in *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex.1982), in which the court held that a municipal ordinance that regulated the location of mobile homes has the "effect of a zoning regulation" and should be evaluated under the principles relating to a city's exercise of its general police power. *Id.* at 792. Like Houston, the city in *Comeau* had no zoning ordinances. *Id.* at 793.

### Defenses

Having determined that the enforcement of deed restrictions by Houston is a governmental function, we now address the merits of appellants' defenses.

**Equitable Affirmative Defenses**

 Appellants concede that their affirmative defenses raised in points of error one through four are equitable in nature. Affirmative defenses based in equity have been consistently held not to apply when the activity complained of is a governmental function. *See, e.g., Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex.1970) ("the general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel."); *Clear Lake Water Auth. v. Winograd*, 695 S.W.2d 632, 640 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.) (holding that estoppel does not apply against a unit of government exercising its governmental functions); *Capitol Rod and Gun Club v. Lower Co. River Auth.*, 622 S.W.2d 887 (Tex.App.-Austin 1981, writ ref'd n.r.e.) ("the general rule is that where a unit of government is exercising its governmental powers, it is not subject to estoppel or laches."); *Lewis Cox & Son v. High Plains Underground Water*, 538 S.W.2d 659, 662 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.), *overruled on other grounds by Monsanto Co. v. Cornerstones*

*Mun. Util. Dist.,* 865 S.W.2d 937 (Tex. 1993) ("the uniform rule is that the state and its essential instrumentalities are immune from the defenses of limitations, laches, . . . and estoppel . . .").

Courts have, however, recognized a limited exception in some circumstances where a party raises an equitable estoppel claim. *Hutchins,* 450 S.W.2d at 836. In *Hutchins,* the court noted that "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Id.* The court went on to state that estoppel in those situations should be "applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.* In *Roberts v. Haltom City,* the Texas Supreme Court again recognized the exception to the general rule that a city could not be estopped as to its governmental functions. 543 S.W.2d 75, 80 (Tex. 1976). The court stated that estoppel of cities engaging in governmental functions may be used "where justice requires and where no governmental function is impaired." *Id.*

 In determining whether justice requires that a party be allowed to pursue his claim of estoppel, we will look at the totality of the circumstances. The exception will be exercised only where "justice, honesty, and fair dealing require it." *Clear Lake City Water Auth.,* 695 S.W.2d at 640. We will take into account the conduct of all parties. A party with "unclean hands" will not be permitted to pursue equitable relief. *See Foxwood Homeowners Ass'n v. Ricles,* 673 S.W.2d 376, 379 (Tex.App.-Houston [1st Dist] 1984, writ ref'd n.r.e.).

In their third point of error, appellants assert the affirmative defense of estoppel. In adherence to the *Hutchins* decision, we will allow appellants to pursue their estoppel claim only if we find that this case is one of those "special cases" where the circumstances clearly demand estoppel to prevent a "manifest injustice."

In support of their estoppel claim, appellants assert that they relied on the non-enforcement of the deed restrictions. Appellant Mandujano offered proof that her predecessor-in-title operated a commercial enterprise on the property, obtained permits to operate the enterprise, and received inspections from various City departments between 1976 and 1994. Mandujano also swore by affidavit that, since 1995, she paid license, permit, sales fees and occupancy taxes to Houston.

The Truong appellants proved by affidavit in the summary judgment proceedings that Houston had also issued them permits to build a commercial structure on their property and that they spent $50,000 to make commercial renovations. The affidavit stated that they would not have spent the money renovating if the City had not issued the remodeling permits. The Truong appellants also hold occupancy and sign permits from Houston.

Giron presented proof that he received a sign permit beginning in 1996 and that he has posted a sign in conformity with that permit continuously since that time.

Houston argues that appellants were deceptive in obtaining the aforementioned permits because the appellants each swore in permit application documents that their businesses were not being conducted in violation of deed restrictions. Appellants, in obtaining their permits, swore that they were personally familiar with the title to the real property and that there were no deed restrictions prohibiting the issuance of the permits. In her application for occupancy, appellant Mandujano agreed that if her occupancy was in violation of a

deed restriction, then her certificate of occupancy would be deemed void. In his affidavit for a commercial building permit, Truong states: "I swear that neither the improvements to be constructed under the building permit, if issued, nor their intended use will violate any deed restrictions." Appellant Giron's application for a sign permit likewise states: "the sign does not violate any applicable deed restrictions."

After weighing the conduct of both parties and considering the totality of the circumstances, we conclude that this case is not one where a manifest injustice would occur if appellants were barred from pursuing their equitable estoppel claim. Justice, honesty, and fair dealing do not require us to allow appellants to pursue their estoppel claim where the permits allegedly relied upon by appellants were acquired through their misrepresentations. We also note the relatively short period of time that appellants have been operating their businesses in violation of the deed restrictions. All appellants purchased their property between 1995 and 1997. In cases such as this, where Houston attempted to enforce the deed restrictions within five years of the purchase of the property, we are hesitant to find reliance on the part of the appellants to the extent that a "manifest injustice" would occur if they were not permitted to pursue their estoppel claim. Accordingly, we hold that the trial court did not err in granting summary judgment against appellants as to their equitable affirmative defenses of changed conditions, waiver, estoppel, and laches.

We overrule points of error one through four.

**Proof of Granted Variances**

■■■ In their fifth point of error, appellants contend that the variances granted to them by the Meadowbrook Civic Association released them from the resi-

dential-use-only restrictions, thus making summary judgment for Houston inappropriate. Appellants argue that, because the Texas Property Code allows an owner's association to compromise or settle litigation, the variances granted to appellants by the owners' association act as a settlement or compromise of the suit brought by Houston. *See* TEX. PROP.CODE ANN. § 204.010 (Vernon Supp.2002).

■■■ The documents given to appellants by the owners' association are not variances. A variance is "a permission to use land in a manner forbidden by the ordinance." *See West Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623 (Tex.App.-El Paso 1996, no pet.) (citing Angus S. McSwain, *The Zoning Board of Adjustment*, 13 BAYLOR L.REV. 21, 29 (1961)). While the enforcement of deed restrictions by Houston is similar to the enforcement of zoning laws, there are no ordinances that govern the use of the land in this case. There is also no statutory authority given to the owners' association to allow land use forbidden by an ordinance. The proper query here is whether, under section 204.010, the owner's association can settle or compromise a suit on behalf of Houston without Houston's consent.

Section 204.010(a) provides in part that: "the property owners' association, acting through its board of directors or trustees, may: ... (4) institute, defend, intervene in, settle, or compromise litigation or administrative proceedings on matters affecting the subdivision." *Id.*

While an owner's association is certainly granted power to institute, defend, intervene in, settle, or compromise litigation, we are not persuaded that the owners' association in this case was authorized to settle a lawsuit instituted by Houston. Houston sued appellants in this case pur-

suant to legislative authorization. Tex. Loc. Gov't Code Ann. § 230.003 (Vernon Supp.2002). The owners' association in this case does not represent Houston. Rather, the owners' association is the representative of the owners within the subdivision. Tex. Prop.Code Ann. § 204.004(a) (Vernon Supp.2002) ("a property owners' association is a designated representative of the owners of property in a subdivision . . .").

We think an absurd result would be created if owners' associations were allowed to compromise or settle lawsuits not instituted by the owners' association, especially where the parties who initiated the suit did not give the owners' association permission or authorization to do so. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex.1999) (in the interpretation of a statute, absurd results should be avoided).

Our reading of section 204.004, in harmony with 204.010, suggests that the owners' associations may compromise litigation on behalf of the subdivision owners, but not on behalf of parties who are not subdivision owners. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001) ("we should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.") (citations omitted).

If appellants' interpretation of section 204.010 were correct, then any private party who brings a lawsuit that affects matters of the subdivision could have his suit settled or compromised by an owners' association without any authorization from the party bringing the suit. We decline to interpret section 204.010 in such a manner. Accordingly, we hold that the trial court did not err when it found that appellants did not raise an issue of material fact by

presenting proof of "variances" from the owners' association.

We overrule appellants' fifth point of error.

### Proof of Releases

In their sixth point of error, appellants contend that proof of releases from various property owners raises an issue of fact, thus making summary judgment for Houston inappropriate.

Property owners in a subdivision may not grant releases of deed restrictions without the agreement of the other owners within the subdivision. *Smith v. Williams*, 422 S.W.2d 168, 172 (Tex.1967). A restrictive covenant may provide for amendments to the restrictions, but the method of amendment must be stated. *Miller v. Sandvick*, 921 S.W.2d 517, 521 (Tex.App.-Amarillo 1996, writ denied).

Restrictive covenants governing the operation of a residential subdivision are to be liberally construed to give effect to their purposes and intent. Tex. Prop.Code Ann. § 202.003(a) (Vernon 1995). Whether restrictive covenants are ambiguous is a matter of law for the courts to decide. *Roman Catholic Diocese of Galveston–Houston v. First Colony Cmty. Serv. Ass'n, Inc.*, 881 S.W.2d 161, 163 (Tex. App.-Houston [1st Dist.] 1994, writ denied). Words and phrases in the covenant must be given their commonly accepted meaning. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657–58 (Tex.1987).

The deed restriction document applicable to this case states that the releases must be from more than 50% of the owners of the front footage lots, and must be executed in writing at least two years before "the expiration of any fifteen (15) year period thereafter." Houston contends that the applicable fifteen-year period ended on August 24, 2000, and, because appellants

did not receive the releases previous to August 24, 1998 (two years previous to the expiration of the fifteen-year period), the releases were not timely. Houston also argues that appellants did not receive releases from more than 50% of the owners of the front footage lots.

Appellants concede that the releases granted to them were not timely, but they argue that the purpose of the two-year period is to provide notice to the other residents of the changes that were authorized. Appellants state that here, where the property had previously been used for business purposes, the two-year requirement should be waived. We disagree.

A valid release from a deed restriction affects the rights of all property owners within the subdivision. The agreement between the owners of the property, documented in the deed restriction, provides a specific method to be used for granting releases. The document is unambiguous in its requirement that the releases be in writing and executed at least two years before the expiration of the applicable fifteen-year period. The ongoing violation of deed restrictions by appellants does not inform property owners that their rights are being affected in the same manner that a valid release does. Accordingly, we conclude that the trial court did not err when it found that appellants did not raise an issue of fact by providing the court with proof of their invalid releases. Because we have found that appellants did not raise an issue of fact with proof of the invalid releases, we decline to address Houston's proposition that appellants did not acquire the requisite number of signatures to obtain valid releases.

We overrule appellants' sixth point of error.

**Proof of Deed Restrictions**

■ In their seventh point of error, appellants contend that summary judg-

ment for Houston was not proper because Houston never offered the deed restrictions as part of its summary judgment proof.

Appellants refer us to *McConnell v. Southside Indep. Sch. Dist.* in support of their contention that Houston's motions for summary judgment were fatally flawed because they did not contain evidence of the deed restrictions applicable to this case. 858 S.W.2d 337 (Tex.1993). *McConnell* stands for the proposition that the grounds for the summary judgment motion must be presented in the motion for summary judgment itself; presenting the grounds for summary judgment in any collateral documents will not suffice. *Id.* at 340–41. It is important to note that *McConnell* was referring specifically to the "grounds" for the summary judgment motion, not the evidence for it. The court stated in that case that "a motion for summary judgment must itself expressly present the grounds upon which it is made .... [r]eliance may not be placed on briefs or summary judgment evidence." *Id.* at 341.

Appellants do not contend that the grounds for summary judgment relief were not stated adequately in the summary judgment motion; rather, appellants complain that Houston's motions for summary judgment did not contain the very deed restrictions from which the grounds were derived. Because appellants' complaint is based upon a lack of evidence, and not a lack of grounds, we conclude that the holding of *McConnell* does not apply here.

With regard to the evidence of the deed restrictions at issue, we conclude, after reviewing the clerk's record, that Houston did offer evidence of the deed restrictions as part of its summary judgment proof. A certified copy of the deed restriction in question was attached to Houston's response to appellant Mandujano's response

to Houston's motion for summary judgment. Another copy of the deed restriction was attached to Houston's response to appellant Truong's response to Houston's motion for summary judgment. Accordingly, we conclude that appellants' seventh point of error is without merit.

We overrule appellants' seventh point of error.

### Defect of Parties

In their eighth point of error, appellants argue that summary judgment was in error because Houston failed to join the owners of all lots within the subdivision as parties. Appellants cite two cases to support their proposition that all owners of the lots in the subdivision should have been joined, both of which involve declaratory judgment actions.[2] The Texas Civil Practice and Remedies Code provides, with respect to declaratory judgment actions, that "all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM.CODE ANN. § 37.006 (Vernon 1997).

We are not governed by section 37.006 in this case because the suit brought by Houston is not a declaratory judgment action. Rather, the joinder issue in this case is governed by Rule 39(a) of the Texas Rules of Civil Procedure.

The proper procedural tool used to raise an issue of a defect in parties is a motion to abate. A motion to abate is used to challenge the plaintiff's pleadings by alleging facts outside the pleadings that prove the suit cannot go forward in its present condition. *Texas Highway Dept. v. Jarrell,* 418 S.W.2d 486, 488 (Tex.1967); *Martin v. Dosohs I Ltd.,* 2 S.W.3d 350, 354 (Tex.App.-San Antonio 1999, pet. denied). In the motion to abate, the defendant must

(1) identify any impediment to the continuation of the suit, (2) identify an effective cure, and (3) ask the court to abate the suit until the defect is corrected. *Martin,* 2 S.W.3d at 354 (citing *Jarrell,* 418 S.W.2d at 488). To review the trial court's ruling on a motion to abate, we must be provided with a statement of facts from the hearing on the motion to abate. *4M Linen & Uniform Supply Co., Inc. v. W.P. Ballard & Co., Inc.,* 793 S.W.2d 320, 322–23 (Tex. App.-Houston [1st Dist.] 1990, writ denied). Without a statement of facts, we must presume the evidence supports the court's ruling. *Id.; see Advance Ross Elec. Corp. v. Green,* 624 S.W.2d 316, 317 (Tex.App.-Tyler 1981, writ ref'd n.r.e.) (holding that error could not be determined where there was no record of evidence presented at the hearing).

In this case, appellants challenged the defect of parties in their responses to Houston's motions for summary judgment. The challenge to the defect in parties, was as follows:

> Initially, [d]efendants would show that there exists a defect of parties in this proceeding. There are approximately 103 lots within Meadowcreek subdivision Section C. Each lot owner should be joined as a party pursuant to T.R.C.P. 39(a). Pursuant to T.R.C.P. [p]laintif has not plead [sic] the names and reasons for not joining same of all interested parties to this litigation.

Appellants have failed to preserve error. Not only have appellants failed to request abatement of the suit, they have also failed to provide us with a record of a hearing on the matter. We have no information that a hearing was conducted at all. Without a record of a hearing, a ruling, or a request for a hearing, we are unable to determine

---

**2.** *Dahl v. Hartman,* 14 S.W.3d 434 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Let-* sos v. Katz, 489 S.W.2d 317 (Tex.Civ.App.-Houston [1st Dist.] 1972, no writ).

whether the trial court abused its discretion. Accordingly, because we have no basis to determine whether the trial court abused its discretion, we will not address the merits of appellants' eighth point of error.

## Uniform Enforcement of Deed Restriction

■ In point of error nine, appellants argue that the trial court erred in granting Houston's request for summary judgment because the City was not uniformly enforcing the deed restrictions with regard to all property and residents. In his response to Houston's motion for summary judgment, appellant Giron reported that "the City dismissed this cause as to the defendants, Travis H. and Barbara McClaugherty." Thus, the City was not "uniformly enforcing these restrictions as to all persons and property."

We note, however, that appellants' brief reflects that the McClaughertys "provided proof to the City that their chiropractic office had been operating continuously since before August 30, 1965 (the date provided by Local Government Code section 230.004 as placing a limitation on the City's right to enforce the deed restrictions)." Because the McClaughertys' office operation predated the City's authority to enforce the deed restrictions, Houston properly nonsuited the cause of action against them. We agree with Houston that "[u]niformity only requires that the law [be] applied uniformly and not that the outcome of each application of the law result[s] in the same outcome." We conclude that appellants have failed to establish a fact issue with regard to whether the deed restriction was uniformly applied to all property and people.

We overrule point of error nine.

## Balancing Equities

■ Appellants argue, in point of error ten, that the trial court erred by granting summary judgment in favor of Houston because the court failed to balance the equities. Appellants also contend that the trial court did not have sufficient information upon which to balance the equities. Thus, appellants conclude, summary judgment should have been denied. We disagree.

We have already noted, in our analysis of appellants' equitable affirmative defenses, that a party with "unclean hands" will not be permitted to pursue equitable relief. *Ricles,* 673 S.W.2d 376, 379. Appellants concede that they have maintained commercial businesses in violation of the residential-only deed restriction. Further, in points of error one through four, we looked at the totality of the circumstances to determine if, in this particular case, equity required the application of certain affirmative defenses. We held that, based upon appellants' own conduct, this case was not the proper venue to apply appellant's equitable affirmative defenses. Likewise, appellants request that the trial court balance the equities—however, appellants' own conduct foreclosed any responsibility of the trial court to balance the equities. Accordingly, we conclude that the trial court properly rendered summary judgment in favor of Houston.

We overrule point of error ten.

### Conclusion

We affirm the trial court's judgment. We overrule all pending motions in this case.