# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00455-CV

**Canario's, Inc., Appellant**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. D-1-GN-13-003779, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Canario's, Inc. appeals from the trial court's granting of a plea to the jurisdiction filed by the City of Austin in a lawsuit brought by Canario's alleging that the City improperly released more than $100,000 in escrow funds related to a construction project. We reverse the trial court's order granting the City's plea to the jurisdiction and remand the cause for further proceedings.

## Background

In 2005, Canario's, as developer of a project to construct a nightclub, deposited with the City $91,897 to be held as fiscal security to ensure proper completion of the project.[1] The escrow

---

[1] When a developer wishes to do a construction project within the City or its extraterritorial jurisdiction, the developer is required to place funds in an escrow account to ensure completion of the project. Once the project is finished or the City otherwise determines the funds should be returned, it reviews an intake memo prepared by City personnel at the time of the initial deposit and tells its accounts payable department who the funds belong to; that department then issues a check to that entity for the amount of the deposit plus interest. In this case, the escrow amount was based on an engineer's estimate that erosion and sedimentation controls would cost $91,897.

agreement between the City and Canario's provided that the funds and accrued interest would be released to Canario's upon the City's acceptance of the improvements for which the funds were deposited, upon the withdrawal of the project, or upon replacement of the fiscal security. The City's intake memorandum provided Canario's name and address but did not include a name or telephone number for a contact person.

In April 2012, the City prepared a "Site Plan – Final Inspection Release/Certificate of Compliance/Fiscal Reduction" form that stated that the "[o]ld fiscal posting ($91,897.00) should be returned to previous owner who posted the escrow." At approximately the same time, the City received a letter purporting to be from Canario's president Edilberto Portillo and stating that Portillo was "requesting the release of any and all Escrow posted with the City of Austin for the [nightclub] project to Mr. Claudio Cornejo and his wife Maria Rosario Flores. They are my local partners on the project." Relying on that letter, the City released $108,679.91 to Maria Flores on May 15, 2012. About one year later, Canario's informed the City that Flores was not authorized to accept the funds.

Canario's sued the City for breach of fiduciary duty, breach of contract, and negligence, alleging that in releasing the funds, the City had violated its policies and its duty to verify the identity of a payee. The City responded with a plea to the jurisdiction asserting that (1) Canario's had forfeited its corporate status in July 2010 and thus lacked standing to sue; (2) the City never entered into a contract with Canario's; (3) the City was immune from suit because it had not entered into a contract for goods or services; (4) the City was performing a governmental function when it accepted the escrow funds and thus was immune from suit; and (5) Canario's had not provided timely notice

2

pursuant to the Texas Tort Claims Act.[2] Canario's responded, asserting that it had reinstated its corporate status, which related back to the date of the forfeiture, and that it thus had standing; that the escrow agreement between the City and Canario's was an enforceable contract; that the City's actions related to the collection and management of the escrow funds were proprietary functions and that the City was therefore not immune from suit; and that the City's arguments related to provisions of the Tort Claims Act did not apply to this suit. The trial court granted the plea and dismissed Canario's claims.

## Discussion

Our analysis in this case turns on whether the City is immune from suit for its conduct related to the collection, retention, and return of Canario's escrow funds.[3] A municipality is protected by governmental immunity when it performs a governmental function, effectively acting on behalf of the State "'in furtherance of general law for the interest of the public at large.'" *City of Georgetown v. Lower Colo. River Auth.*, 413 S.W.3d 803, 807 (Tex. App.—Austin 2013, pet. dism'd) (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 738-39 (Tex. 1986), *superseded by statute on other*

---

[2] Tex. Civ. Prac. & Rem. Code §§ 101.001-.109; *see id.* § 101.101 (governmental unit entitled to notice of claim against it under chapter 101 "not later than six months after the day that the incident giving rise to the claim occurred").

[3] The standards applied when reviewing a trial court's decision on a plea to the jurisdiction are well established. A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the case, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000), and governmental immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction, *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo, and in doing so, we construe the pleadings liberally in favor of the plaintiff. *Id.* at 226-227.

*grounds as stated in City of Terrell v. McFarland*, 766 S.W.2d 809, 813 (Tex. App.—Dallas 1988,

writ denied)).  Proprietary functions, on the other hand, are those that the municipality performs in

its discretion and primarily for the benefit of those within its corporate limits.  *Id.* (quoting *Gates*,

704 S.W.2d at 739).  Because the municipality is not acting on behalf of the State in performing

proprietary functions, it generally is not entitled to governmental immunity for those functions.[4]  *Id.*

(quoting *Gates*, 704 S.W.2d at 739); *see City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d

501, 512-13 (Tex. App.—Austin 2014, no pet.) (governmental immunity derives from State's

---

[4]  The City argues that the proprietary-governmental dichotomy does not apply to claims for breach of contract.  However, in *City of Georgetown v. Lower Colorado River Authority*, 413 S.W.3d 803 (Tex. App.—Austin 2013, pet. dism'd), we considered whether the dichotomy still applied following the supreme court's statement that it had "never held that [the proprietary-governmental] distinction determines whether immunity from suit is waived for breach of contract claims." *Tooke v. City of Mexia*, 197 S.W.3d 325, 343-44 (Tex. 2006) (further stating that court need not decide issue because services were governmental functions and, therefore, city was immune from suit); *see City of Georgetown*, 413 S.W.3d at 810-12 (quoting and analyzing *Tooke*).  We considered the common-law history surrounding the dichotomy and determined that "the proprietary-governmental dichotomy does apply to contract claims under the common law."  *City of Georgetown*, 413 S.W.3d at 812.

We went on to consider whether the legislature, in enacting section 271.152 of the local government code, had intended to abrogate the common-law proprietary-governmental dichotomy and concluded that it did not.  *Id.* at 812-14; *see* Tex. Loc. Gov't Code § 271.152 ("A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.").  We held that the legislature's enacting of section 271.152 did not "logically implicate the proprietary-governmental dichotomy" because that dichotomy is applied to determine whether immunity applies in the first instance (as it would to a governmental function) before we consider whether that immunity has been waived.  *City of Georgetown*, 413 S.W.3d at 814.  We stated that the legislature reasonably could have believed "it did not need to reiterate the validity of the dichotomy in section 271.152.  This interpretation is directly supported by section 271.158, in which the legislature expressly stated that nothing in section 271.152 'shall constitute a grant of immunity to suit to a local governmental entity.'"  *Id.* (quoting Tex. Loc. Gov't Code § 271.158).

sovereign immunity and protects municipality when performing governmental functions, "which are essentially those in which a unit is deemed to be acting as an arm of the State and in the interest of the general public").

Thus, if the City was performing proprietary functions in this case, it is not immune from suit, and we need not consider any issues related to waiver of immunity, including those related to the applicability of the Texas Tort Claims Act. *See City of Georgetown*, 413 S.W.3d at 814 & n.8 (noting that because city had no governmental immunity, Court did not have to address alternative argument that the city's immunity was waived; "the proprietary-governmental dichotomy concerns whether governmental immunity exists in the first place, not whether it has been waived"). Our inquiry therefore starts with asking whether the actions at issue were proprietary or governmental functions, keeping in mind that "the doctrine of nonliability is construed strictly against the municipality." *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987).

A city performs a governmental function if it acts "as the agent of the State in furtherance of general law for the interest of the public at large." *Gates*, 704 S.W.2d at 738-39 (internal quotations omitted). The key difference is that "[g]overnmental functions are what a municipality *must* do for its citizens and proprietary functions are what a municipality *may, in its discretion*, perform for its inhabitants." *Oldfield v. City of Houston*, 15 S.W.3d 219, 226 (Tex. App.—Houston [14th Dist.] 2000, pet. denied), *superseded by statute on other grounds as recognized in Truong v. City of Houston*, 99 S.W.3d 204, 210 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see Carowest Land*, 432 S.W.3d at 519 (explaining that city performs proprietary function if it acts in its private capacity for benefit of only those within its corporate limits and not as arm of

5

State (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006))). Stated another way, "governmental functions are those normally performed by governmental units, *e.g.*, police and fire protection, while the proprietary functions are those that can be, and often are provided by private persons, *e.g.*, gas and electric service." Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity*, 49 Texas L. Rev. 462, 463 (1971).

The City argues that in accepting fiscal security for the construction project it was performing the governmental function of ensuring funding in case the City was required to complete the work itself. It also argues that any function performed by its Planning and Development Review Department "qualified as a 'planning' function, protected by immunity."[5] We disagree.

In determining whether the City was performing a proprietary or governmental function, we focus not on the department involved or the general responsibilities of that department but on the specific acts underlying Canario's claims—the City's decision to accept and hold escrow deposits and its handling of the return of such deposits. *See Hudson v. City of Houston*, 392 S.W.3d 714, 722-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Our inquiry is guided in part by the analyses by courts of this state that have held that when a city decides to perform an act that "could easily be performed by private contractors," such an act is proprietary.[6] *See*

---

[5] *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a)(29) (defining "zoning, planning, and plat approval" activities as governmental functions for purposes of Tort Claims Act). Under the circumstances of this case, the outcome is the same regardless of whether our analysis is conducted under the Tort Claims Act or the common law. *See City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 519 n.52 (Tex. App.—Austin 2014, no pet.).

[6] The supreme court has stated that in cases brought under the Tort Claims Act, "the judiciary retains the ability to determine whether a function is governmental or proprietary in nature, so long as it is not specifically enumerated as a governmental function under section 101.0215(a)." *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 776 n.5 (Tex. 2006).

*City of Houston v. Southwest Concrete Constr., Inc.*, 835 S.W.2d 728, 733 (Tex. App.—Houston [14th Dist.] 1992, writ denied), *superseded by statute on other grounds as recognized in East Houston Estate Apartments, L.L.C. v. City of Houston*, 294 S.W.3d 723, 732 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (holding that city "was not acting as an inspector for purposes of ensuring compliance with the building code but rather chose to become actively involved in the implementation of the federal Rehabilitation Loan Program"); *see also City of Round Rock v. Smith*, 687 S.W.2d 300, 303 (Tex. 1985) (holding that plat approval is governmental function and stating, "We have generally held ministerial acts which could be performed by a private subcontractor to be proprietary functions."); *Truong*, 99 S.W.3d at 210-11 (holding that enforcement of zoning and deed-restriction ordinances is governmental function because "zoning authority is derived from the police power of the state, and all property is held subject to the valid exercise of the power").

This is not a case in which we are splitting out one operation of a government function, contrary to the argument implied by the City's insistence that any act performed by its planning department should be considered a governmental function. *See, e.g.*, *City of San Antonio v. Butler*, 131 S.W.3d 170, 177-78 (Tex. App.—San Antonio 2004, pet. denied) (rejecting plaintiffs' attempt to split aspects of city's operation of convention center into discrete, proprietary functions). The City's collecting, holding, and distributing escrow funds are functions that could easily be handled by a private entity and are discretionary and not essential to or even usually associated with a municipality's planning or zoning functions. *See Oldfield*, 15 S.W.3d at 226 (explaining that governmental functions are those that a city must do for its citizens and proprietary functions are those that it may, through exercise of discretion, decide to perform). And, although the escrow

7

funds are intended to be used in the event the City must finish or repair a project, the City's holding

of the funds is not a planning function. In taking these actions, the City is acting as an escrow agent,

which is traditionally a private third-party that holds the escrow funds "until the occurrence of a

condition, at which time the third party is to hand over the [fund] to the promisee." Black's Law

Dictionary 624 (9th ed. 2009).[7] This role is one that can be and often is performed by private entities.

*See* Greenhill & Murto, *Governmental Immunity*, 49 Texas L. Rev. at 463.

Strictly construing these considerations against the City, *see Pike*, 727 S.W.2d at 519,

we hold that the City's acting as an escrow agent in collecting, holding, and disbursing escrow funds

related to construction projects was a proprietary function, *see City of Georgetown*, 413 S.W.3d

at 812, 814; *see also City of Houston*, 835 S.W.2d at 733 (holding that act that could easily be

performed by private contractor is proprietary). Therefore, the City was not immune from suit, and

the trial court erred in granting the City's plea to the jurisdiction. We reverse the trial court's order

and remand the cause to the trial court for further proceedings. We need not consider any issues

related to waiver of immunity. *See City of Georgetown*, 413 S.W.3d at 814 n.8.

---

[7] *See also* Black's Law Dictionary 624 (defining "escrow agreement" as "instructions given to the third-party depositary of an escrow"), 73 (defining "escrow agent" as "third-party depositary of an escrow") (9th ed. 2009); Webster's Third New Int'l Dictionary 775 (2002) (defining "escrow" as money or other property "delivered into the keeping of a third party by one party to a contract or sometimes taken from one party to a contract and put in trust to be returned only upon the performance or fulfillment of some condition of the contract or to insure such performance or fulfillment by some other disposition").

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Reversed and Remanded

Filed:   August 26, 2015