**ELBAR INVESTMENTS, INC., Appellant**

v.

**GARDEN OAKS MAINTENANCE ORGANIZATION, Appellee**

NO. 01–14–00447–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 2, 2016

Rehearing Overruled August 2, 2016

Jerel S. Twyman, Houston, TX, for Appellant.

W. Austin Barsalou, Barsalou & Associates, David K. Anderson, Anderson & Cunningham, Houston, TX, for Appellee.

Panel consists of Justices Jennings, Massengale, and Huddle.

## OPINION

Michael Massengale, Justice

Appellant Elbar Investments, Inc., appeals from the trial court's final judgment and permanent injunction in favor of appellee Garden Oaks Maintenance Organization. The court found that Elbar's property violated Garden Oaks's deed restrictions, and it issued a permanent injunction that prevented Elbar from selling or re-renting the property in a manner inconsistent with the judgment until it made all commercially reasonable efforts to cure the violation. Elbar appeals, asserting the trial court erred in its interpretation of the deed's restrictive covenant, and thus it abused its discretion by ordering the permanent injunction.

Because we conclude as a matter of law that there is no evidence that Elbar violated the covenant, we reverse and remand for further proceedings.

## Background

The facts underlying this appeal are essentially undisputed. The property at issue is a lot in the Garden Oaks subdivision. All of the lots in Garden Oaks are subject to deed restrictions originally established in 1937, including a set of architectural restrictions. These restrictions expressly contemplate homes that accommodate two families. The restrictions do not prohibit resubdivision or make any reference to subdividing lots.

The disputed property was part of a Garden Oaks lot that originally had a frontage of 75 feet. A multi-family duplex residence was constructed on the lot in 1979. When built, this residence fully complied with the Garden Oaks deed restrictions.

A prior owner split the lot in half, resulting in the two halves of the duplex separately occupying the two new lots. Each new lot had a frontage of 37½ feet. In 2008, Garden Oaks sued the then-owners of the resubdivided lots for violation of a restrictive covenant in the deed. The restriction at issue stated: "No residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet." This suit was dismissed with prejudice after the defendant claimed the two lots had been reunified by a single owner.

In 2010, two separate lenders foreclosed on the property, with each claiming title to one of the resubdivided halves. The western half of the property was sold to Elbar in a nonjudicial foreclosure sale. Garden Oaks subsequently sued the owners of both halves of the property in two separate proceedings, claiming violation of the 75-foot deed restriction. The record does not disclose the status or result of the suit against the owner of the eastern half of the duplex.

The suit against Elbar was tried to the bench. Garden Oaks's president testified about the deed restrictions and his opinion that Elbar's property was in violation of those restrictions because the frontage on the current lot was only 37½ feet. On cross-examination, the president admitted that the duplex on the property was initially in compliance, and that Elbar had not engaged in any new construction on the property. The president also admitted that to "erect" something usually entails that "something is actually physically constructed." Elbar's vice president testified that Elbar had not erected any new structure on the property or made any improvements beyond painting the building.

The trial court issued findings of fact and conclusions of law in which it found that the foreclosure sale effectively resubdivided the lot and that the frontage of Elbar's property was less than 75 feet. It specifically found that "Elbar has not erected any improvements on Elbar's Property since acquiring it in 2010." The trial court concluded: "Property that is initially in compliance with deed restrictions can nevertheless fall into noncompliance by the act of subdividing the lot, *even if the deed restrictions do not explicitly prevent subdividing lots.*" The court thus determined that Elbar's property was in violation of the restrictions and that Garden Oaks was entitled to some form of relief.

After further briefing by the parties, the court issued a permanent injunction that required Elbar to "use all commercially reasonable efforts to rejoin the west one-half of [the property] with the east one-half." The injunction provided that unless Elbar could demonstrate that it could not afford to do so, it was required to either purchase the other half of the property or sell its portion to enable the lots to be reunified. The injunction ordered Elbar to refrain from either selling or re-renting the property in any manner inconsistent with that judgment. Elbar appealed.

### Analysis

On appeal, Elbar argues the trial court erred by finding a violation of the restrictive covenant and by entering the permanent injunction.

The relevant restrictive covenant states: "No residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet." Elbar's chief argument, both at trial and on appeal, is that because it did not engage in construction of any kind, it did not "erect" anything on the lot, and therefore it did not violate the covenant.

Elbar also argues that the restrictions did not prohibit resubdivision and therefore there was no other violation. It does not contest the trial court's factual findings regarding the frontage of the current lot, but it does challenge the legal conclusion that the resubdivision of the lot caused Elbar's property to violate the restrictive covenant. Garden Oaks responds that the restrictions did not need to explicitly prohibit subdivision and that the effect of the resubdivision was sufficient to create a violation of the deed restrictions.

We review a trial court's legal conclusions de novo. *City of Pasadena v. Gennedy,* 125 S.W.3d 687, 691 (Tex.App.– Houston [1st Dist.] 2003, pet. denied). The deed restrictions in this case are restrictive covenants concerning real property. *See* Tex. Prop. Code § 202.001(4). Restrictive covenants are generally subject to the rules of contract construction. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). We examine the covenant as a whole in light of the circumstances present when the covenant was made. *Id.* We must give a restrictive covenant's words and phrases their commonly accepted meaning. *Truong v. City of Houston,* 99 S.W.3d 204, 214 (Tex.App.–Houston [1st Dist.] 2002, no pet.). Whether restrictive covenants are ambiguous is a legal question, and this court reviews the lower court's interpretation of a restrictive covenant de novo. *Id.*; *Gennedy,* 125 S.W.3d at 692.

At common law, covenants restricting the free use of land are not favored but will be enforced when they are confined to a lawful purpose and are unambiguous. *E.g., Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex.1987). A covenant is ambiguous if, after the appropriate rules of construction have been applied, it is susceptible to more than one reasonable inter-

pretation. *Pilarcik,* 966 S.W.2d at 478; *Gennedy,* 125 S.W.3d at 692–93.

██ Elbar contends that no violation of the deed restrictions has been demonstrated, because the only relevant prohibition is that "[n]o residence shall be erected on a lot or homesite of less frontage than seventy-five (75) feet," and it did not construct anything new on the property. The commonly accepted meaning of the word "erect" at the time the covenant was imposed on the subdivision was "to raise, as a building; build; construct." *Erect,* THE CENTURY DICTIONARY AND CYCLOPEDIA (15th ed.1906); *see also Erection,* BLACK'S LAW DICTIONARY (2d ed.1910) (noting that "this term does not include repairing, alteration, enlarging, or removal").

In response, Garden Oaks compares these circumstances to the factual and legal situation in *Finkelstein v. Southampton Civic Club,* 675 S.W.2d 271 (Tex.App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). In *Finkelstein,* a residential corner lot with two structures was subdivided, and a civic association sued to enforce deed restrictions on the lot. *See id.* at 272–74. The deed restrictions at issue did not specifically prevent subdivision, but the civic association argued that the resubdivision led to one of the buildings fronting on the wrong street, in violation of the covenant. *See id.* at 275–76.

This case is factually similar to *Finkelstein* to the extent that neither the Garden Oaks deed restrictions nor the covenants in *Finkelstein* explicitly prohibited resubdivision. *See id.* As in *Finkelstein,* the act of resubdivision is not the problem in this case—the question is whether that resubdivision caused a violation of the covenant. *See id.* That, however, is where the similarity ends.

The covenant in *Finkelstein* was different. It specified:

> Any and all buildings that may be constructed upon corner lots *shall front upon the proper street* and not on a side street and shall *have its* [sic] *main entrance on the proper front street.*

*Id.* at 276. The resubdivision in *Finkelstein* was found to have caused a violation of this deed restriction. *See id.* at 277. Because the covenant in question in that case imposed continuing requirements that "[a]ny and all buildings ... shall front upon the proper street" and that they "shall have its main entrance on the proper front street," it was not limited to restricting acts of construction. *Id.* at 276.

Unlike the circumstances in *Finkelstein,* the covenant at issue in this case does not, by its terms, suggest that a conforming structure later may come to violate the restriction if a subdivision of the property causes a change to the frontage. The Garden Oaks covenant prohibits a residence from being erected under a specific circumstance, when the lot or homesite has less frontage than 75 feet. Based on the language of the covenant, when a new residence is built, it must conform to the frontage requirements, but the covenant does not provide that later subdivision of the lot without erecting another residence will cause a previously conforming residence to fall into violation of the frontage requirement.

This interpretation is supported by comparing the language of other provisions within the Garden Oaks deed restrictions. Another subsection within the architectural restrictions provides that no "fence, wall, hedge ... shall be erected, *grown or maintained* on any part of any lot forward of the front building line." (Emphasis supplied.) Similarly, no "radio aerial wires shall be *maintained*" on a particular part of any lot. (Emphasis supplied.) Unlike the language chosen for the frontage requirement, these subsections do contem-

plate a continuing obligation to avoid violations. Had Garden Oaks intended the frontage restriction to indefinitely apply to multi-family residences after they are built, it could have included the same or similar language requiring the maintenance of a minimum amount of frontage for a residence, as opposed to specifying a requirement applicable when a "residence shall be erected on a lot."

This interpretation also fits logically into the covenant as a whole. *See Pilarcik*, 966 S.W.2d at 478. The deed restrictions anticipate the construction of duplex residences and do not prohibit subdivision of lots. By requiring the initial construction to comply with the deed requirements, the restrictions ensure an aspect of uniformity of appearance without prohibiting a future division of ownership of a conforming duplex. Any future new construction would remain subject to the architectural restrictions, and would be a proper subject for an enforcement suit such as this one.

Based on the commonly accepted meaning of "erected" and the context of the other subsections of the deed's architectural restrictions, we conclude that the covenant in this case is unambiguous, and that the division of the duplex's ownership did not cause a violation of the restrictive covenant prohibiting residences from being "erected" on a lot with less than 75 feet of frontage. *See id.*; *Gennedy*, 125 S.W.3d at 692–93. It is undisputed, and the trial court specifically found, that Elbar did not "erect a residence on a lot or homesite of less frontage than seventy-five (75) feet." The residence in question already had been "erected" decades prior to the resubdivision or any legal action. Therefore, we conclude as a matter of law that Elbar did not violate the covenant in this case, as it did not "erect" anything that would cause such a violation. *See Pilarcik*, 966 S.W.2d at 478.

Elbar asks that we render judgment by imposing a permanent injunction as it proposed in the trial court. However, the appellate record contains no pleading requesting injunctive relief in favor of Elbar. Accordingly, we remand the case for a determination of whether there are any outstanding issues in light of this court's opinion, and for entry of a final judgment. *See* Tex. R. App. P. 43.2, 43.3.

### Conclusion

We reverse the judgment of the trial court, dissolve the permanent injunction against Elbar, and remand to the trial court for further proceedings.