**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-16-00393-CV**
**NO. 09-17-00006-CV**

**RIDGEPOINT RENTALS, LLC, Appellant**

**V.**

**JAMES W. MCGRATH AND BERNADINE L. MCGRATH, Appellees**

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. CIV30246**

**MEMORANDUM OPINION**

In cause number 09-16-00393-CV, Ridgepoint Rentals LLC ("Ridgepoint" or "Appellant") filed an interlocutory appeal of an order granting a temporary injunction in favor of James W. and Bernadine L. McGrath ("the McGraths" or "Appellees"). In cause number 09-17-00006-CV, Ridgepoint filed an appeal of an order granting a summary judgment and a permanent injunction in favor of the McGraths. The McGraths and Ridgepoint each own property located in Oak Terrace Estates in Montgomery County, Texas. The dispute between the parties relates to

1

certain deed restrictions for Oak Terrace Estates that were recorded on February 1, 1971 (the "Deed Restrictions"). We dismiss the appeal in cause number 09-16-00393-CV as moot, and we affirm the trial court's order appealed in cause number 09-17-00006-CV.

## Original Petition

On September 29, 2016, the McGraths filed an original petition against defendant Ridgepoint for alleged violations of the Deed Restrictions. According to the original petition, on March 22, 2010, Lot 18 of Section 4 of Oak Terrace Estates ("the Property") was conveyed to Susan and Stefan Ractliffe. On the following day, Ridgepoint was formed as a Texas limited liability company, with Stefan Ractliffe as its sole member, and on April 21, 2010, the Ractliffes conveyed the Property to Ridgepoint.

The McGraths alleged that Ridgepoint was violating the Deed Restrictions, and that the restrictions were covenants running with the land.[1] The Deed Restrictions stated in relevant part:

> 1. These covenants are to run with the land and shall be binding upon all parties and all persons claiming under them until December 31st., 2000, A.D., at which time said covenants shall be automatically extended for successive periods of Ten (10) years, unless an instrument

---

[1] According to the parties, the subdivision homeowners' association board attempted to amend the deed restrictions in 2004, but a majority of owners did not ratify the proposed amendment. Only the 1971 Deed Restrictions are at issue in this lawsuit.

2

signed by a majority of the then owners of the tract has been recorded, agreeing to change said covenants in whole or in part.

2. If the parties hereto, or any of them, or their heirs, successors, or assigns, shall violate or attempt to violate any of the covenants herein, it shall be lawful for the undersigned owners, their heirs, administrators, or assigns to enter and abate such violation without liability, or they, their heirs, administrators, or assigns, and any other persons owning any real property situated in said subdivision shall have the right to prosecute any proceeding at law or equity against the person or persons violating or attempting to violate such restrictions and either to prevent him or them from doing, or to cause to be removed such violation, or to recover damage for such violation.

. . . .

10. The land to be conveyed hereunder shall be used for residential purposes only, except those which are designated on the official plat of said addition as being commercial lots or reserves and except those lots which may from time to time be designated by grantor, its successors or assigns, for business, recreational or commercial purposes. The term "residential purposes" as used herein shall be held and construed to exclude hospitals, clinics, duplex houses, apartment houses, boarding houses, hotels, and all other commercial uses and all such uses of said property are hereby expressly prohibited. No building shall be erected, altered, placed or permitted to remain on any residence tract other than one detached single family dwelling and a private garage for not more than two cars.

. . . .

13. No structure of a temporary character, trailer, mobile house, basement, tent, shack, garage, barn, or other outbuilding shall be used on any tract any time as a residence either temporarily or permanently.

The McGraths alleged that Ridgepoint had violated the Deed Restrictions by "operating a weekend/vacation rental of the home situated" on the Property and by "operation of a hotel" on the Property. The McGraths sought a temporary and

3

permanent injunction, enjoining Ridgepoint from using the Property for weekend or vacation rentals and enjoining Ridgepoint from advertising the Property for rent for any period of time less than ninety days.

## Answer and Counterclaim

In its answer, Ridgepoint admitted the Ractliffes conveyed the Property to Ridgepoint. Ridgepoint further alleged that the Ractliffes use the Property as their own vacation home, that Ridgepoint advertises and leases the Property "for varying terms, generally less than 14 days[,]" that Ridgepoint pays "the Texas Hotel Tax for leases of thirty days or less[,]" and that "[h]ouses have long been leased throughout the subdivision." Ridgepoint counterclaimed for a declaratory judgment, asking the court to declare that the Deed Restrictions permit "leasing and leasing for any duration[.]" Ridgepoint also asserted that the McGraths' claims were barred by waiver, abandonment, and estoppel.

## October 2016 Hearing

On October 7, 2016, the court held a hearing on the McGraths' motion for temporary injunction. Oscar Good testified that he is a member of the Oak Terrace Estates architectural committee that was established by the Deed Restrictions for the subdivision. Good agreed he was aware that Ridgepoint had used the Property for "weekend rentals or vacation rentals" and he was not aware of any other property in Section 4 of the subdivision used as a hotel. According to Good, at times "four to

4

five cars" were at the Property on weekends, and the driveway does not hold that many cars.

Stefan Ractliffe testified that he and his wife purchased the Property in 2010 and subsequently conveyed it to Ridgepoint, which is a business that he owns. Ractliffe agreed he had file an application for a hotel occupancy tax on the Property and that "we've obviously been renting it out[]" in addition to staying there and allowing friends to stay there. Ractliffe explained as follows:

> Q. Okay. So you have charged for a short-term rental for a weekend or a few days?
>
> A. It's typically a weekend or over a week, a period of a week, typically, yeah.
>
> Q. Okay. And how many times have you rented it and reported under this hotel occupancy tax, the use of this as a hotel?
>
> A. Maybe 15 or 20 times.
>
>   . . . .
>
> Q. So you're still renting the property to weekend people.
>
> A. Currently, yes.

Ractliffe explained that he advertises the Property for rent on the VRBO website. He explained that the rental amount varies by season but ranges "from about $300 to about $450[]" per day. Ractliffe testified that his gross income on the Property was about $50,000, of which he netted about $42,000 to $45,000.

According to Ractliffe, he had spoken with his neighbors concerning tenants parking on the street, and the rental agreement he uses limits the number of vehicles to five. Ractliffe also explained that he limits the number of people to nine because that is how many people the Property sleeps and more than nine people creates wear and tear on the house and disruption in the area.

James McGrath testified that he and his wife live in the subdivision, where they own two lots. McGrath explained that he did not know whether people staying at the Property owned by Ridgepoint were tenants or friends of the Ractliffes and that no one has parked in the McGraths' driveway. He agreed that his complaint was that the Property was rented for weekends, and he understood that rentals for shorter than ninety days were not allowed by the Deed Restrictions.

On October 19, 2016, the trial court signed an order granting a temporary injunction, enjoining Ridgepoint from weekend or vacation rentals of the Property for a period of less than ninety days and ordering Ridgepoint to remove all advertising of the Property for a rental period of less than ninety days. Ridgepoint filed an interlocutory appeal of the temporary injunction with this Court.

On November 17, 2016, Ridgepoint filed an amended answer that included a counterclaim requesting dismissal of the plaintiffs' claims with prejudice. Therein, Ridgepoint argued that the McGraths' claims were barred by waiver or abandonment because

. . . [l]easing of the living areas of main dwellings for various durations, including for terms of under 90 days, has occurred at a sign[i]ficant number of properties at the subdivision for many years without any owner or entity taking any enforcement action.

Motion for Summary Judgment

The McGraths filed a motion for summary judgment on November 18, 2016. The McGraths argued that no material issues of fact existed and that "the only issues are legal issues." Citing to the testimony of Stefan Ractliffe provided during the hearing on temporary orders, the McGraths alleged that Ridgepoint started renting the Property for weekend rentals in August or September 2015, the Property has nine beds, and Ridgepoint has rented the property "[m]aybe 15 or 20 times[]" for periods of a week or less, charging $300 to $450 a night. Further, the McGraths alleged that Ridgepoint has netted around $42,000 to $45,000 in the last year from renting the Property to persons who are typically from the Houston area and who are not members of the Ractliffes' family, that Ridgepoint advertises the Property for rent on the internet, Ridgepoint filed a Texas Questionnaire for Hotel Occupancy Tax on May 24, 2016, and Ridgepoint began paying hotel occupancy taxes on July 14, 2016. According to the McGraths, such activities indicate that Ridgepoint "is operating a weekend/vacation rental of the home . . . in violation of the 1971 Deed Restriction, number 10."

The McGraths argued that the Deed Restrictions at issue in this case compare to those in *Benard v. Humble*, 990 S.W.2d 929, 930-32 (Tex. App.—Beaumont

7

1999, pet. denied), a case in which this Court construed a deed restriction that limited the use of a home to "single-family residence purposes." In *Bernard*, we held that the deed restriction did not permit rentals shorter than ninety days. *Id*. The McGraths also relied on *Munson v. Milton*, 948 S.W.2d 813 (Tex. App.—San Antonio 1997, writ denied). Notably, *Munson* was cited by the dissenting opinion in *Bernard*. 990 S.W.2d at 932 (Burgess, J., dissenting). In *Munson*, the use of a residence for short-term rentals was deemed to be prohibited by the restrictive covenants that declared that

> All tracts within the Chisum's subdivision shall be used solely for residential, camping or picnic[k]ing purposes and shall never be used for business purposes. Motel, tourist courts, and trailer parks shall be deemed to be a business use.

948 S.W.2d at 815, 817-18. The San Antonio court concluded that the restrictive covenant allowed only residential use. *Id.* at 816-17. The court read the provisions together in determining the intent of the covenants and concluded the restrictions were unambiguous and prohibited the homeowner from "renting and/or leasing said property to the public for lodging, vacation and recreation purposes." *Id.*at 815-16. The San Antonio Court applied section 202.003 of the Texas Property Code, explaining that when construing the intent of the framers of the restrictive covenant, it would "liberally construe the covenant's language and . . . ensure that every provision is given effect." *Id.* at 816 (citing Tex. Prop. Code Ann. § 202.003(a)

(West 2014)).[2] The court explained that "[a]lthough the term 'residence' is given a variety of meanings, residence generally requires both physical presence and an intention to remain." *Id*. at 816-17. "If a person comes to a place temporarily, without any intention of making that place his or her home, that place is not considered the person's residence." *Id.* at 817. Additionally, the court noted that the "Texas Property Code draws a distinction between a permanent residence and transient housing, which includes rooms at hotels, motels, inns and the like." *Id.* (citing Tex. Prop. Code Ann. § 92.152(a) (West 2014); *Warehouse Partners v. Gardner*, 910 S.W.2d 19, 23 (Tex. App.—Dallas 1995, writ denied)).

Similarly, the McGraths cited to *Tarr v. Timberwood Park Owners Association, Inc.*, 510 S.W.3d 725 (Tex. App.—San Antonio 2016, pet. granted), wherein the San Antonio court followed *Munson* and again held that the short-term stays at issue therein were prohibited by the wording in the applicable deed restrictions, which provided as follows:

> All tracts shall be used *solely for residential purposes*, except tracts designated on the above mentioned plat for business purposes, provided, however, no business shall be conducted on any of these tracts which is noxious or harmful by reason of odor, dust, smoke, gas fumes, noise or vibration . . . .[]

---

[2] We cite to the current version of statutes, as subsequent amendments do not affect the disposition of this appeal.

*Id*. at 729. The McGraths argued that they were entitled to a permanent injunction to enforce the Deed Restrictions against Ridgepoint. And, the McGraths sought a summary judgment on their claims and on Ridgepoint's counterclaim.

Cross-Motion for Summary Judgment

Ridgepoint subsequently filed a cross-motion for summary judgment and a request for a dismissal of the McGraths' lawsuit with prejudice. Therein, Ridgepoint admitted that it rents the Property for periods of fourteen days or less, that it pays Texas Hotel Tax, and that it netted about $42,000 annually. Ridgepoint argued that the Property "has none of the features or characteristics of a hotel[]" and that the Deed Restrictions do not impose duration restrictions on use of properties in the subdivision. Ridgepoint argued that while the Deed Restrictions do impose duration-of-use requirements on temporary or other structures set apart from the main dwelling, they are silent as to any duration-of-use requirement for the main dwelling with the exception of a basement.[3] According to Ridgepoint, the Deed Restrictions are clear and specific, and a liberal construction, as required by section 202.033 of the Property Code, favors the free use of the Property and the use of the main dwelling as a temporary residence. Ridgepoint argued that in the absence of a limitation on renting or a limitation on duration of use of a main dwelling, a court

___

[3] In his sworn declaration, Stefan Ractliffe attested that the main dwelling at the Property does not have a basement.

10

should not impose one. Ridgepoint also argued that, of the prohibited commercial uses ("hospitals, clinics, duplex houses, apartment houses, boarding houses, [and] hotels[]"), only hotels "are presumptively short-term in nature." Although Ridgepoint admitted to paying Texas Hotel Tax, Ridgepoint also argued that it does not operate a hotel, and the Property has no features of a hotel, such as a concierge, a front desk, or a business office. Ridgepoint further argued that renting for any duration is not a commercial use and that "its business, to the extent it is one, is to provide residence use of a home[.]"

Ridgepoint challenged the efficacy of *Benard* and argued that the minimum duration requirement in *Benard* was problematic in the absence of specific language in the deed restrictions at issue regarding leasing or duration of occupancy. Ridgepoint further argued that under *Tarr* and *Benard*, "an owner of a vacation home is apparently in violation of deed restrictions if that owner uses his [] own home for weekends only, in addition to being forbidden from renting for short terms." Ridgepoint urged the trial court to reject the reasoning in *Tarr* and *Benard* and instead to adopt the reasoning in *Zgabay v. NBRC Property Owners Association*, No. 03-14-00660-CV, 2015 Tex. App. LEXIS 9100 (Tex. App.—Austin Aug. 28, 2015, pet. denied) (mem. op.), in which the Third Court of Appeals found that leasing for periods of shorter than six months did not violate a deed restriction limiting use to residential purposes.

11

Order Granting Summary Judgment

On December 20, 2016, the trial court signed an order granting summary judgment for the McGraths and permanently enjoining Ridgepoint from operating a short-term rental business at the Property. Therein, the trial court observed that the undisputed evidence reflected that Ridgepoint rented the Property for short periods of a "weekend" or "a week[,]" Ridgepoint charges $300 to $450 per night, grossed about $50,000 and netted about $45,000 in the previous year, rented to persons not members of the Ractliffes' family and generally to persons from Houston, advertised the Property for rent on the internet, and paid Texas hotel occupancy taxes. The court also observed that, despite Ridgepoint's assertion of the defense of waiver and abandonment of the Deed Restrictions, there was no evidence of other short-term rentals in the section of the subdivision where the Property was located. The trial court concluded as follows:[4]

> The Defendant is operating a weekend/vacation rental of the home situated on Lot 18 in violation of the 1971 Deed Restriction, number 10. Such use also amounts to use of the Property for non residential purposes, including but not limited to operating a hotel that is prohibited under the deed restrictions, specifically number 10.
>
> . . . .
>
> The Court finds that the Defendant has violated the Restrictive Covenants, and the relief sought by Plaintiffs should be granted, and

[4] The order also awarded attorney's fees to the McGraths, which we do not address herein because the Appellant has not challenged the attorney's fees on appeal.

12

the Defendant should be ordered to cease and desist from short term rentals of the Property for period[s] of time of less than ninety (90) days.

Ridgepoint timely filed its notice of appeal.

Appeals

On October 19, 2016, in cause number 09-16-00393-CV, Ridgepoint Rentals filed its notice of interlocutory appeal of the trial court's order granting the temporary injunction. The trial court later rendered a final order granting the McGraths summary judgment and a permanent injunction on December 20, 2016, while the interlocutory appeal of the temporary injunction was pending before this Court.

When a trial court renders a final judgment while an appeal of an order granting or denying a temporary injunction is pending, the temporary injunction order becomes moot. *See Richards v. Mena*, 820 S.W.2d 372 (Tex. 1991); *Isuani v. Manske-Sheffield Radiology Grp., P.A.*, 802 S.W.2d 235, 236 (Tex. 1991). In this case, the temporary injunction and the summary judgment (which includes a permanent injunction) address the same parties, same issues, and same property. Accordingly, because the interlocutory appeal is now moot, we dismiss the appeal of the temporary injunction in cause number 09-16-00393-CV for lack of subject-matter jurisdiction. *See, e.g.*, *BCH Dev., LLC v. Lakeview Heights Addition Prop. Owners' Ass'n*, No. 05-14-00003-CV, 2015 Tex. App. LEXIS 3908 (Tex. App.—

13

Dallas Apr. 17, 2015, no pet.) (mem. op.); *Livingston v. Arrington*, No. 03-11-00266-CV, 2012 Tex. App. LEXIS 3413 (Tex. App.—Austin Apr. 25, 2012, no pet.) (mem. op.).

In appellate cause number 09-17-00006-CV, Ridgepoint challenges the trial court's order granting summary judgment in favor of the McGraths. Initially, Ridgepoint argues that the trial court erred in making findings of fact on the summary judgment. Next, Ridgepoint argues that the trial court erred in determining that the Deed Restrictions prohibit short-term rentals and Ridgepoint argues that a "residential purposes only" restriction imposes no minimum duration on occupancy or leasing. Finally, Ridgepoint argues that the trial court erred in ordering only a $1,000 temporary injunction bond when the "unrebutted evidence" established that Ridgepoint had netted about $42,000 in rents on the property in the previous year.

Standard of Review

We review a trial court's order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156-57 (Tex. 2004); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). To prevail on a traditional motion for

14

summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life*, 128 S.W.3d at 216. An issue is conclusively established "if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). We also review a trial court's interpretation of restrictive covenants de novo. *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied).

## Findings of Fact

Appellant argues that the trial court erred in making findings of fact in its order granting summary judgment and that this Court should review the summary judgment de novo. Appellees argue that, to the extent the trial court's order sets forth findings of fact, such would not affect this Court's review.

A trial court should not make findings of fact in connection with a summary judgment. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997); *Reynolds v. Reynolds*, No. 14-14-00624-CV, 2015 Tex. App. LEXIS 12009, at *15 (Tex. App.—Houston [14th Dist.] Nov. 24, 2015, no pet.) (mem. op.) (citing *Coastal Transp. Co. v. Crown, Cent. Petroleum Corp.*, 20 S.W.3d 119, 125 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)); *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.*, 914 S.W.2d 179, 188 n.7 (Tex. App.—San Antonio 1995, writ denied).

15

Findings of fact have no place in a summary judgment proceeding because, for summary judgment to be rendered, there cannot be a genuine issue as to any material fact, and the legal grounds are limited to those stated in the motion and response. *See* Tex. R. Civ. P. 166a(c); *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *Willms v. Ams. Tire Co.*, 190 S.W.3d 796, 810 (Tex. App.—Dallas 2006, pet. denied) ("If summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response.").

When a trial court makes findings of fact in its ruling on a summary judgment, any factual recitations in the trial court's order granting summary judgment are mere surplusage that we cannot consider in our appellate review. *See IKB*, 938 S.W.2d at 441; *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); *see generally Valley Mun. Util. Dist. No. 2 v. Hild*, 578 S.W.2d 827, 829 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (stating that recitations in a dismissal order that do not constitute a judgment are mere surplusage). We disregard the surplusage and we overrule Appellant's first issue.

## Deed Restrictions

Next, Appellant argues that the trial court erred in granting summary judgment for the McGraths. Appellant argues that, although the Deed Restrictions require "residential purposes only[,]" they prohibit temporary occupancy only as to

the basement of the main dwelling, and they are silent as to leasing or duration of use. Appellant argues that the court erred in imposing a minimum duration on occupancy or leasing. Appellant also argues that there is no evidence that the Property is a hospital, duplex, boarding house, hotel, or that any business is conducted at the Property. Appellant additionally argues that a prohibition on short-term leasing as a "business use" of the Property would apply equally to long-term rentals.

<u>Restrictive Covenants</u>

Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) (citing *Scoville v. Springpark Homeowner's Ass'n*, 784 S.W.2d 498, 502 (Tex. App.—Dallas 1990, writ denied). An instrument is not ambiguous simply because the parties disagree over its meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009) (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998) (holding that mere conflicting expectations or disputes are not enough to create ambiguity).

Whether a restrictive covenant is ambiguous is a matter of law for the court to decide. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *Truong v. City of Houston*, 99

S.W.3d 204, 214 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Roman Catholic Diocese of Galveston-Houston v. First Colony Cmty. Serv. Ass'n, Inc.*, 881 S.W.2d 161, 163 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). A reviewing court construes an unambiguous instrument as a matter of law. *Dynegy*, 297 S.W.3d at 168 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). When the language of a restrictive covenant is unambiguous, section 202.003(a) of the Property Code requires that the restrictive covenant be liberally construed to give effect to its purpose and intent. *Jennings v. Bindseil*, 258 S.W.3d 190, 195 (Tex. App.—Austin 2008, no pet.); *see* Tex. Prop. Code Ann. § 202.003(a) (West 2014). When terms are not defined, courts determine the parties' intent by giving the terms their "plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res.*, 939 S.W.2d at 121; *see also Truong*, 99 S.W.3d at 214 (citing *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657-58 (Tex. 1987)) ("Words and phrases in the covenant must be given their commonly accepted meaning."); *Travis Heights Improvement Ass'n v. Small*, 662 S.W.2d 406, 409 (Tex. App.—Austin 1983, no writ) (Language in a restrictive covenant "will be given its plain grammatical, ordinary and commonly-accepted meaning, unless it appears that to do so will defeat the intention of the parties as clearly evidenced by other provisions of the instrument.").

Whether a restrictive covenant is violated by a particular set of facts is also a question of law, which we review de novo. *See Elbar Invs., Inc. v. Garden Oaks Maint. Org.*, 500 S.W.3d 1, 3-5 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (reviewing de novo whether the facts constituted a violation of a restrictive covenant). As a general rule, covenants restricting the free use of land are not favored by the courts, but will be enforced if they are clearly worded and confined to a lawful purpose. *Wilmoth*, 734 S.W.2d at 657; *Jennings*, 258 S.W.3d at 194-95.

Analysis

On appeal, neither party contends that the deed is ambiguous, and we agree. *See Wenske*, 521 S.W.3d at 794 (ambiguity is a question of law for the court). Accordingly, we must first ascertain the parties' intent as expressed in the language of the deed and then determine whether the facts in this case constitute a violation of the Deed Restrictions. *See id.*; *Elbar*, 500 S.W.3d at 3-5; *Munson*, 948 S.W.2d at 816.

The dispute between the parties in this matter pertains to paragraph 10 of the Deed Restrictions. Therein, the use of the Property is limited to "residential purposes only[.]" The provision further expressly provides that "[t]he term 'residential purposes' as used herein shall be held and construed to exclude hospitals, clinics, duplex houses, apartment houses, boarding houses, hotels, and all other commercial uses and all such uses of said property are hereby expressly prohibited."

19

For purposes of the hotel occupancy tax, the Texas Tax Code defines "hotel" to include "a hotel, motel, tourist home, tourist house, tourist court, lodging house, inn, rooming house, or bed and breakfast." Tex. Tax Code Ann. § 156.001(a) (West Supp. 2016). The statute also provides that "hotel" includes short-term rentals of all or part of a residential property to a person who is not a permanent resident. *Id.* § 156.001(b).

The undisputed evidence reflects that Ridgepoint started renting the Property to third parties in August or September 2015 and it rented the Property about twenty times. According to Stefan Ractliffe, the Property sleeps nine people, and Ridgepoint rents the Property for periods of "a weekend" or "a week," charging $300 to $450 per night. Ractliffe testified that the Property was advertised for rent on a website called "VRBO, which is owned by Home Away, and that [] connects potential tenants with [] owners and owner operators." Ridgepoint grossed about $50,000 from rentals of the Property and netted around $42,000 to $45,000. On May 24, 2016, Ridgepoint filed a Texas Questionnaire for Hotel Occupancy Tax with the State of Texas and began paying hotel occupancy taxes on July 14, 2016, on the rental of the Property.

This Court has previously determined that a short-term rental of ninety days or less constituted a non-residential use in violation of a deed restriction that limited use to "single-family residence purposes." *See Benard*, 990 S.W.2d at 931-32.[5] On the record before us, we conclude that Ridgepoint's short-term rentals of the Property amount to a non-residential purpose, because such rentals constituted the operation of a hotel or other commercial use and the use was excluded by the Deed Restrictions. Accordingly, we cannot say the trial court erred in determining that Ridgepoint's use of the Property was prohibited by the Deed Restrictions or in granting the injunctive relief as requested by the McGraths.

Appellant argues that "[t]he deed restrictions here specifically address what duration-of-use limits apply to what buildings." Appellant notes that paragraph 13 of the Reservations and Restrictions states:

> No structure of a temporary character, trailer, mobile house, basement, tent, shack, garage, barn, or other outbuilding shall be used on any tract any time as a residence either temporarily or permanently.

---

[5] We have also previously examined the Deed Restrictions for Section 4 of Oak Terrace Estates. *See generally Architectural Control Comm. of Oak Terrace Estates v. McCormick*, No. 09-10-00495-CV, 2011 Tex. App. LEXIS 9114 (Tex. App.—Beaumont Nov. 17, 2011, no pet.) (mem. op.) (finding no evidence supported the jury's finding that the deed restrictions had been abandoned). In *McCormick*, we explained that "[i]tem 10 requires that a lot be used only for residential purposes unless the lot is designated on the official pl[a]t as a commercial lot." *Id.* at *3. We also explained that "Section 4 is restricted to residential use, with certain exceptions not applicable here. The deed restrictions include a restriction that the lots not be put to commercial use." *Id.* at *8.

Appellant argues that because paragraph 13 evinces the drafters' intent to limit duration-of-use as to outbuildings, but paragraph 10 is silent as to duration-of-use limits, the trial court erred in imposing a duration-of-use limitation on the main dwelling. However, the duration of use in paragraph 13 pertains to temporary structures, whereas paragraph 10 limits the use of the property to "residential purposes" and then specifically states that "[t]he term 'residential purposes' as used herein shall be held and construed to exclude hospitals, clinics, duplex houses, apartment houses, boarding houses, hotels, and all other commercial uses and all such uses of said property are hereby expressly prohibited." We conclude that the plain and unambiguous language of the Deed Restrictions prohibits the short-term rentals.

We reject Appellant's reliance upon *Zgabay v. NBRC Property Owners Association*. *See* 2015 Tex. App. LEXIS 9100, at *8 (concluding that a restrictive covenant that restricted use "for single family residential purposes only" permitted rentals and placed no time limits on the duration of a lease). The deed restriction at issue in *Zgabay* was silent regarding prohibitions against commercial uses and

factually distinguishable from the case at bar. *See id.* at *1 (disputed deed restriction stated "for single family residential purposes").[6, 7]

Appellant also argues that construing the Deed Restrictions to prohibit short-term rentals would, in effect, create various other problems, including situations involving property co-owned by multiple parties, leases to multiple lessees, post-

---

[6] We also distinguish the present case from *Boatner v. Reitz*, decided by the Austin Court of Appeals. *See Boatner v. Reitz*, No. 03-16-00817-CV, 2017 Tex. App. LEXIS 7967, at **1, 8-9 (Tex. App.—Austin Aug. 22, 2017, no pet.) (mem. op.). While the deed restriction in *Boatner* limited use "for residence purposes only, and not for business[,]" it did not define "residence purposes" or "business" or specify what activities constitute business use. *Id.*; *cf. Garrett v. Sympson*, 523 S.W.3d 862 (Tex. App.—Fort Worth 2017, pet. filed) (court determined that short-term rentals were not prohibited where disputed deed restriction did not define residential or commercial purposes). In our case, however, the Deed Restrictions specifically define "residential purposes" as excluding "hospitals, clinics, duplex houses, apartment houses, boarding houses, hotels, and all other commercial uses[.]" Accordingly, we are guided by the specific language of the restriction itself.

[7] Appellant also cites to the following cases from jurisdictions outside Texas: *Dunn v. Aamodt*, 695 F.3d 797 (W.D. Ark. 2012); *Slaby v. Mountain River Est. Residential Ass'n, Inc.*, 100 So. 3d 569 (Ala. Civ. App. 2012); *Houston v. Wilson Mesa Ranch Homeowners Ass'n, Inc.*, 360 P.3d 255 (Colo. App. 2015); *Roaring Lion, LLC v. Exclusive Resorts PBL1, LLC*, Nos. 30152 and CAAP-12-0000003, 2013 Haw. App. LEXIS 232 (Haw. Ct. App. Apr. 24, 2013); *Pinehaven Planning Bd. v. Brooks*, 70 P.3d 664 (Idaho 2003); *Applegate v. Colucci*, 908 N.E.2d 1214 (Ind. Ct. App. 2009); *Lowden v. Bosley*, 909 A.2d 261 (Md. 2006); *Mullin v. Silvercreek Condo. Owners Ass'n, Inc.*, 195 S.W.3d 484 (Mo. Ct. App. 2006); *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736 (N.M. Ct. App. 2013); *Mason Family Trust v. DeVaney*, 146 N.M. 199 (N.M. Ct. App. 2009); *Yogman v. Parrott*, 937 P.2d 1019 (Or. 1997); *Scott v. Walker*, 645 S.E.2d 278 (Va. 2007); *Wilkinson v. Chiwawa Communities Ass'n*, 327 P.3d 614 (Wash. 2014); *Ross v. Bennett*, 203 P.3d 383 (Wash. Ct. App. 2008).

23

sale lease-backs, or an owner's temporary hardship during which a short-term lease could prove beneficial. Such are not the facts in the case at bar, and we do not address such hypotheticals as we may not render advisory opinions. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting that "the Texas Constitution does not afford courts jurisdiction to make advisory decisions or issue advisory opinions"). We also need not decide whether the Deed Restrictions permit long-term rentals, as the record before us does not present this question. *See* Tex. R. App. P. 47.1. We overrule Appellant's second issue.

## Temporary Injunction Bond

Appellant's third issue argues that the trial court erred in ordering a $1,000 temporary injunction bond because the "unrebutted evidence" established that Ridgepoint's annual rental income was about $42,000. As we have already explained, Ridgepoint's appeal of the order granting a temporary injunction was mooted when the trial court rendered summary judgment. *See, e.g.*, *Isuani*, 802 S.W.2d at 236. When the appeal on the temporary injunction became moot, all previous orders pertaining to the temporary injunction are set aside by the appellate court and the case is dismissed. *Texas Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 461 (Tex. 1952). Therefore, the order granting the temporary injunction, which also ordered the temporary injunction bond, has

24

expired, and an appeal pertaining to such order is moot.[8] *See Estate of Sheshtawy*, 478 S.W.3d 82, 85 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that final judgment rendered moot any issue on appeal relating to appellant's request for a temporary injunction); *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 741 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (same). We lack jurisdiction to render an opinion on a matter that has become moot, hence we render no opinion concerning the amount of the temporary injunction bond. *See Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (explaining that a mooted appeal presents no live controversy, such that a court has no jurisdiction to render an opinion thereon); *see also* Tex. R. App. P. 47.1.

We dismiss the accelerated appeal in appellate cause number 09-16-00393-CV as moot, and we affirm the trial court's order in appellate cause number 09-17-00006-CV.

DISMISSED AS MOOT; AFFIRMED.

_____
LEANNE JOHNSON
Justice

---

[8] No bond is required for a permanent injunction. *See* Tex. R. Civ. P. 684; *see also Regal Entm't Grp. v. iPic-Gold Class Entm't, LLC*, 507 S.W.3d 337, 345-46 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (explaining that the applicant for a temporary injunction must post a bond to protect the defendant from the harm he may sustain as a result of temporary relief granted upon the reduced showing required of the injunction plaintiff, pending full consideration of all issues) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990)).

Submitted on July 11, 2017
Opinion Delivered December 7, 2017

Before Kreger, Horton, and Johnson, JJ.